RAMAPO–INDIAN HILLS EDUCATION ASSOCIATION, INC., RE-SPONDENT–APPELLANT AND CROSS–RESPONDENT, v. RA-MAPO INDIAN HILLS REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION, PETITIONER–RESPONDENT AND CROSS–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 23, 1980—Decided October 10, 1980.

International Transport as named insured, and (2) in default thereof, International may procure such insurance on behalf of Coaxum at Coaxum's expense. *See Carolina Cas. Ins. Co. v. Ins. Co., etc., supra*, 595 *F*.2d at 139.

36

Before Judges FRITZ, POLOW and JOELSON.

*Theodore M. Simon,* argued the cause for respondent–appellant and cross–respondent (*Goldberg & Simon,* attorneys; *Theodore Simon,* of counsel; *Louis P. Bucceri* on the brief).

*Jacob Green* argued the cause for petitioner–respondent and cross–appellant (*Green, Koenig and Dzwilewski,* attorneys; *Jacob Green* of counsel; *Ellen Harrison* on the brief).

The opinion of the court was delivered by

POLOW, J. A. D.

For several years prior to the 1978–79 school year Keith Elvin was employed by petitioner board of education (board) as a teacher of instrumental music. Pursuant to terms of a collective bargaining agreement between the board and respondent education association (association), Elvin had a 7–hour and 45–minute in–school work day for which he was paid a salary commensurate with his educational qualifications and experience. In addition to his regular duties, Elvin voluntarily assumed extracurricular responsibilities as special school advisor in the position of band director, for which he received additional compensation in the sum of $1,400 annually.

For the 1978–79 school year Elvin decided not to assume the extracurricular duties. Thereupon, the board reviewed the structure and function of the positions of instrumental music teacher and band director and concluded that the educational needs of the school required a reorganization of the music program. Consequently, both positions which he had filled were abolished and, in their place, a full–time position of band director/music teacher was created. Compensation was set according to the teacher's salary scale plus a differential of $1,860 for the additional hours required to perform the necessary duties. The new position was offered to and accepted by Elvin, but the association filed a grievance on his behalf seeking binding arbitration. The board countered with a petition for a "scope of negotiations" determination by the Public Employment Relations Commission (PERC).

PERC enjoined arbitration with regard to hours of work but refused to restrain submission of the issue of compensation to arbitration. Both sides appeal, the association urging that hours of work and workload are mandatorily arbitrable and the board seeking a determination that PERC erred in permitting arbitration of the grievance concerning compensation.

When the grievance was originally submitted, the following relief was sought:

(1) removal of extracurricular responsibilities from Elvin's contract;

(2) reestablishment of the former instrumental music teacher position and extracurricular special school advisor position of band director;

(3) posting of the vacancy in the extracurricular program, and

(4) providing Elvin with compensation for band director activities *pro rata* based on his annual salary.

Subsequently, *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.*, 78 *N.J.* 144 (1978), delineated the distinction between mandatorily negotiable terms and conditions of employment and those which are within managerial prerogative and not arbitrable. The association recognized *Ridgefield Park* as prohibiting arbitration of the board's decision to consolidate the positions and withdrew its demands relating thereto. However, it persisted in its demand that the issues of hours, workload and compensation be submitted to arbitration.

PERC's "Decision and Order" states that all issues other than compensation were "disposed of by the concession that the consolidation of positions and assignment of Elvin are managerial prerogatives." While we are substantially in accord with its final conclusion, in our view PERC misconstrued the association's position. In its brief submitted to PERC the association insisted, as it does on this appeal, that "workload and hours" remain mandatorily negotiable along with the compensation issue despite its "concession."

Although it does not dispute the arbitration clause in the contractual grievance procedure, the board questions the legal propriety of arbitrating the effects of a managerial decision on teacher's hours, workload and compensation. The threshold issue of whether the subject matter of the grievance is within the scope of collective negotiations must be resolved by PERC. *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., supra,* 78 *N.J.* at 153–155. Because PERC has special expertise in this area, *Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n,* 79 *N.J.* 311, 316 (1979), no court should make this initial determination. *State v. State Supervisory Employees Ass'n,* 78 *N.J.* 54, 83 (1978). If PERC determines that the dispute is within the scope

of collective negotiations, the grievance may proceed to arbitration. *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., supra,* 78 *N.J.* at 154. PERC will issue an injunction permanently restraining arbitration if it reaches a contrary conclusion. *Ibid.*

The New Jersey Employer–Employee Relations Act, *N.J. S.A.* 34:13A–1 *et seq.,* in dealing with the scope of collective bargaining, expressly authorizes negotiations with respect to "terms and conditions" of public employment. *N.J.S.A.* 34:13A– 5.3; *State v. State Supervisory Employees Ass'n, supra,* 78 *N.J.* at 66. However, the Legislature did not define the phrase "terms and conditions," nor did it indicate which subjects are negotiable and which subjects are beyond the scope of negotiation. *Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n,* 64 *N.J.* 17, 24 (1973). Nevertheless, the Supreme Court ruled that the Legislature did not contemplate that local school boards could abdicate their management responsibility to implement local educational policies. *Id.* at 25. Consequently, to the extent that collective negotiations could fairly be accomplished without significant interference with management's educational responsibilities, local boards of education have the statutory responsibility to negotiate in good faith with their employees concerning matters which "intimately and directly affect" the employees' work and welfare. *Ibid.*

*Dunellen's* definition of the scope of negotiations was further refined in *Englewood Bd. of Ed. v. Englewood Teachers' Ass'n,* 64 *N.J.* 1 (1973), which stated that:

> ... [M]ajor education policies which indirectly affect the working conditions of the teachers remain exclusively with the Board and are not negotiable whereas items which are not predominantly educational policies and directly affect the financial and personal welfare of the teachers do not remain exclusively with the Board and are negotiable. [at 7.]

The court in *State Supervisory Employees Ass'n, supra,* defined "scope of negotiations" as follows:

> ... [N]egotiable terms and conditions of employment are those matters which intimately and directly affect the work and welfare of public employees and on which negotiated agreement would not significantly interfere with the exercise

of inherent management prerogatives pertaining to the determination of governmental policy. [78 *N.J.* at 67; citations' omitted]

This definition was subsequently repeated in *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., supra*, 78 *N.J.* at 156; *Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n, supra*, 79 *N.J.* at 320, and *Woodstown–Pilesgrove, etc., Bd. of Ed. v. Woodstown–Pilesgrove, etc., Ed. Ass'n*, 81 *N.J.* 582, 590–591 (1980). In the latter case, the definition was applied to express as well as inherent managerial prerogatives. *Id.* at 591.

█ Boards of education and exclusive representatives of teaching staff members must negotiate upon and are free to agree to proposals governing any term and condition of employment as above defined, provided they have not been preempted by a specific statute or regulation which sets or controls a particular term and condition of employment. *State v. State Supervisory Employees Ass'n, supra*, 78 *N.J.* at 81. There are but two legislatively directed categories of subjects in public employment negotiation–mandatorily negotiable terms and conditions of employment and nonnegotiable matters of government policy. *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., supra,* 78 *N.J.* at 162. The Legislature did not create a permissive category of negotiations in which the parties have the option of negotiating subjects in public employment labor relations. *Id.* at 162, 166.

█ The days and hours of work by individual teaching staff members, their workloads and compensation are traditionally negotiable terms and conditions of employment. *Burlington Cty. College Faculty Ass'n v. Bd. of Trustees*, 64 *N.J.* 10, 14 (1973). *See, also, Woodstown–Pilesgrove, etc., Bd. of Ed. v. Woodstown–Pilesgrove, etc., Ed. Ass'n, supra*, 81 *N.J.* at 589; *Englewood Bd. of Ed. v. Englewood Teachers' Ass'n, supra*, 64 *N.J.* at 6–7. These matters appear to be the items the Legislature had in mind when it coined the phrase "terms and conditions of employment." *Englewood, supra* at 7. However, the mere fact that the subject of negotiations concerns hours, workload and compensation does not in itself make them mandatorily

negotiable terms and conditions of employment. *Woodstown--Pilesgrove, supra.* To be mandatorily negotiable, the terms and conditions of employment must not " 'significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of government policy.' " *Id.* at 590–591, citing *State Supervisory Employees Ass'n, supra,* 78 *N.J.* at 67. In *Woodstown–Pilesgrove* the court noted:

Logically pursued, these general principles–managerial prerogatives and terms and conditions of employment–lead to inevitable conflict. Almost every decision of the public employer concerning its employees impacts upon or affects terms and conditions of employment to some extent. While most decisions made by a public employer involve some managerial function, ending the inquiry at that point would all but eliminate the legislated authority of the union representative to negotiate with respect to 'terms and conditions of employment.' *N.J.S.A.* 34:13A–5.3. Conversely to permit negotiations and bargaining whenever a term and condition is implicated would emasculate managerial prerogatives. [81 *N.J.* at 589]

The two conflicting principles cannot be reconciled by focusing solely upon the impact or effect of a managerial decision, *id.* at 589–590, but, instead, the nature of the terms and conditions of employment must be considered in relation to the extent of their interference with managerial prerogatives. *Id.* at 591. Although a weighing or balancing must still be made, the court has sanctioned an analysis which focuses on the impact of each principle on the other. *Ibid.* Where the educational goal is dominant, there is no obligation to negotiate and subject the issue and its impact to binding arbitration, "even though they may affect or impact upon . . . terms and conditions of employment." *Ibid.* Hence, the basic inquiry must be whether the dominant concern involves an educational goal or the work and welfare of the teachers. The principle corresponding to the dominant concern must then prevail. Nevertheless, since the lines which divide these competing policies are often indistinct, they must be drawn on a case by case basis. *Englewood Bd. of Ed. v. Englewood Teachers Ass'n, supra,* 64 *N.J.* at 7.

If Elvin's hours and workload are nonnegotiable, the association argues that there is nothing to prevent the board from requiring Elvin to work every night and weekends to supervise extracurricular activities which it perceives to

be within the duties of a band director. In support thereof, the association cites: *Woodstown–Pilesgrove, supra* (teachers required to work two additional hours on the day before Thanksgiving); *Englewood, supra* (hours of employment for four special education teachers extended 1 hour and 45 minutes to conform to hours of other teachers); *Maywood Bd. of Ed. v. Maywood Ed. Ass'n*, 168 *N.J.Super.* 45 (App.Div.1979), certif. den. 81 *N.J.* 292 (1979) (increase in teacher's working hours by 20 minutes a day and increase in pupil contact time of two physical education teachers to equalize the workload with that of other teachers); *Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n*, 157 *N.J.Super.* 74 (App.Div.1978) (teachers required to report 15 minutes earlier each day); *Byram Tp. Bd. of Ed. v. Byram Tp. Ed. Ass'n*, 152 *N.J.Super.* 12 (App.Div.1977) (teachers required to report 20 minutes before and leave five minutes after classes; limit on the teaching periods for teachers in departmental areas to five a day with a minimum of two subject area preparations); *Red Bank Bd. of Ed. v. Warrington*, 138 *N.J.Super.* 564 (App.Div.1976) (assignment of additional teaching period while teachers' regular classes were being taught music, physical education and art by specialists).

PERC did not refer to any of the above authorities in its decision. Two PERC decisions were cited which implied that the involuntary performance of extracurricular duties affects terms and conditions of employment, including workload, hours and compensation. *Pascack Valley Reg'l High School Dist. Bd. of Ed.*, 3 *N.J.P.E.R.* 114 (1977) (football coaches); *Rutherford Bd. of Ed.*, 3 *N.J.P.E.R.* 37 (1976) (student activities advisors and stage crew director). Recognizing that those decisions were inconsistent, PERC declined to follow either. Instead, PERC held that under the circumstances, hours and workload (to the extent that it is not severable from hours) are not negotiable terms and conditions of employment.

All of the authorities relied on by the association predate the *Woodstown–Pilesgrove* decision. Still we perceive no change

resulting from application of its principles. In every case relied upon by the association, the controversy over hours and workload did not interfere with managerial prerogatives. The absence of power in a board to compel a teacher to report to work earlier or later and leave earlier or later, or to increase a teacher's hours to equalize the workload with that of other teachers, or to require teachers to work during their free time or to increase the number of pupil contact hours, does not interfere with its delegated constitutional duty of ensuring that all children receive a thorough and efficient education. *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., supra,* 78 *N.J.* at 165. In those controversies, the concern is predominantly with the work and welfare of the teachers rather than educational policy.

The association argues that nonnegotiability of hours and workload would allow the board to require Elvin to work seven days a week for months on end. Nevertheless, arbitrability still depends upon whether the dominant concern is educational. If it is, there is, of course, a remedy for abuse of managerial discretion. Arbitrary or capricious exercise of managerial prerogative is susceptible to challenge by traditional means other than arbitration. Undoubtedly, arbitrary decisions by a board of education in performance of its inherent educational prerogatives are subject to scrutiny and correction by the Commissioner of Education. There is lodged with him "responsibility over public education and broad authority to supervise all public schools, *N.J.S.A.* 18A:4–23." *Hinfey v. Matawan Reg'l Bd. of Ed.,* 77 *N.J.* 514, 525 (1978). He has "fundamental and indispensable jurisdiction over all disputes and controversies arising under the school laws." *Ibid.* Our Supreme Court has repeatedly "reaffirmed the great breadth of the Commissioner's powers." *Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, supra,* 64 *N.J.* at 23, citing *Jenkins v. Morris Tp. School Dist.,* 58 *N.J.* 483, 492 (1971).

Here, Elvin's hours and workload, which are intricately interwoven, are nonnegotiable because they are significantly

interrelated with the exercise of inherent management prerogatives pertaining to the determination of governmental policy. When Elvin informed the board of his decision not to accept the extracurricular position of band director for the upcoming school year, the board had to review the structure and function of the music program in an effort to deal with the vacancy. An educational policy decision had been made by the board to offer its students an instrumental music program which enabled them to participate in extracurricular musical activities after school and on weekends. Because Elvin taught band members in his classes and worked with them in their band routines during the school day as part of his regular duties as instrumental music teacher, the board concluded that the position of band director should be combined with the regular music teacher staff position. Consequently, it eliminated the teaching staff member and special school advisor positions and created a full–time position of band director/music teacher. In this manner the board could continue to offer students musical activities supervised by the teaching staff member best suited for the job. Whether its actions amount to abuse of managerial discretion is not a proper subject for binding arbitration.

The association suggests that the board should hire another person to supervise extracurricular musical activities. The Legislature has expressly vested local school boards with the power to employ, promote, transfer and dismiss teaching staff members. *N.J.S.A.* 18A:11–1; *N.J.S.A.* 18A:16–1; *N.J.S.A.* 18A:28–9; *Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, supra,* 64 *N.J.* at 23. Although such a personnel decision has some impact on teacher's welfare, that factor is less significant than and outweighed by the board's managerial responsibility to make personnel decisions in the manner which it considers most likely to promote the overall goal of providing all students with a thorough and efficient education. *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., supra,* 78 *N.J.* at 156. In *Dunellen* it was held that a board could not legally have agreed to submit to arbitration the soundness or validity of its determination that it

would be educationally desirable to consolidate two chairman-
ships into a newly created chairmanship. This was predominate-
ly an educational policy exclusively within the board's preroga-
tive. *Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, supra,* 64 *N.J.*
at 21. Hence, the decision to consolidate the positions is not
negotiable, as the association has conceded. For the same
reasons the board cannot be compelled to negotiate the duties of
the new position or the hiring of a separate band director in this
situation.

The newly formed position of band director/music teacher
entails the same extracurricular duties that Elvin, as extracur-
ricular band director, was previously required to perform–super-
vising the marching band, jazz ensemble, concert band, band
council, school musical, color guard, flag squad, twirlers and
ensembles. In addition to giving performances, these activities
require supervised practice sessions which must take place after
school since students attend classes during the regular school
day. To subject to arbitration the removal of after–school
working hours could affect the quality of these musical activities
and would preclude the exercise of the managerial prerogative
to assign personnel. The decision to create the new position
cannot be separated from the hours required to perform the
duties associated therewith. There is no statutory provision in
the education laws which prevents a board from requiring a
teacher to work after school and on weekends. If the exercise
of the board's prerogative in this respect is to be attacked as
arbitrary or capricious, or as an abuse of managerial discretion,
it must be by application for relief to the Commissioner of
Education.

On the other hand, compensation has been viewed by the
Supreme Court as "one of the most important considerations
inducing a teacher to enter into the employment relationship."
*Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n, supra,* 79 *N.J.*
at 311. The board does not contest the fact that compensation
associated with the position of band director/music teacher is a
mandatorily negotiable term and condition of employment. In-

stead, the board argues that it does not necessarily follow that the matter must be submitted to arbitration.

By statute, the parties to a collective negotiations agreement may establish any grievance procedure, including binding arbitration, for the resolution of disputes concerning the terms and conditions of employment. *N.J.S.A.* 34:13A–5.3; *Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n, supra,* 79 *N.J.* at 323–324, 325. Here, the union and board clearly agreed upon a grievance procedure which includes binding arbitration as a last resort. Consequently, since compensation is a term and condition of employment, the grievance pertaining thereto may properly be submitted to binding arbitration.

With respect to the compensation problem, the board describes its educational policy decision as an assignment of preexisting extracurricular duties. The association views the decision to consolidate the two positions Elvin previously held as a change in regular teaching duties. Notwithstanding these two divergent viewpoints, a precise classification is not necessary to resolve this appeal from the scope of negotiations determination. Whether Elvin is entitled compensation for his band director activities based, *pro rata,* on his annual salary, is arbitrable. *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., supra,* 78 *N.J.* at 154. Compensation for a newly created post undeniably constitutes a "condition" of work. A unilateral determination thereof is the antithesis of the legislative goal that the terms and conditions of public employment be established through bilateral negotiations. *N.J.S.A.* 34:13A–5.3; *Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n,* 78 *N.J.* 25, 48 (1978).

Under the circumstances of this case, neither hours of employment nor workload are mandatorily negotiable and are not to be submitted to binding arbitration. Since Elvin has several years of experience in conducting the extracurricular activities and is fully aware of the number of hours necessary, arbitration with respect to compensation may proceed without delay whether or not additional relief is sought from the Commissioner of Education with respect to the other issues.

The order of PERC, submitting the issue of compensation to arbitration, is affirmed. Arbitration of hours and workload in connection with the newly created position is permanently enjoined.