RAPID CITY EDUCATION
ASSOCIATION, Petitioner
and Appellant,

v.

RAPID CITY AREA SCHOOL
DISTRICT NO. 51-4,
Appellee.

No. 14522.

Supreme Court of South Dakota.

Argued Nov. 28, 1984.

Decided Oct. 30, 1985.

Linda Lea M. Viken of Finch & Viken, Rapid City, for petitioner and appellant.

Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for appellee.

FOSHEIM, Chief Justice.

This is an appeal by the Rapid City Education Association (Association) from an or-

der of the circuit court affirming a decision of the South Dakota Department of Labor that held that certain items were not negotiable under SDCL 3–18–3. We reverse and remand.

Association is the duly recognized bargaining representative of the teachers in the Rapid City school system. On January 20, 1982, Association submitted to Rapid City Area School District No. 51–4 (District) proposed amendments to the 1980–82 negotiated agreement between the parties. Among these amendments were the following items that Association desired to submit to negotiation:

E. If, at either the senior high school or junior high school, an employees (sic) assignment exceeds five (5) fifty-five (55) minute periods of classroom instruction, the employee's annual compensation shall be increased by twenty (20%) percent, for each fifty-five (55) minute period in excess of five (5).

F. If, at either the senior high school or junior high school, an employee is assigned more than two (2) subject matter areas, the employees (sic) annual compensation will be increased by ten (10%) percent for each additional subject matter.

G. If, at either the senior high school or junior high school, an employee is assigned more than three (3) preparations, the employees (sic) annual compensation will be increased by ten (10%) percent for each preparation above three (3).

H. If the amount of student contact time exceeds two hundred seventy five (sic) (275) minutes per day for elementary teachers or two hundred sixty (260) minutes per day for special services teachers and CODY, the employees (sic) annual compensation will be increased by one percent (1%) for each fifteen (15) minutes, or major fraction times the number of days per week the established student contact time is exceeded.

I. The weighted student contacts for any employee in grades kindergarten through three (3) will be between seventeen (17) to twenty-two (22). The weighted student contacts for any employee in grades four (4) through twelve (12) will be between twenty-two (22) and twenty-seven (27). If these ranges are exceeded for any employee, the employees (sic) annual compensation will be increased by five (5%) percent for each weighted student contact in excess of twenty-two (22) for grades kindergarten through three (3) and twenty-seven (27) for grades four (4) through twelve (12).

1) Each students (sic) abilities will be weighted for determining student contacts on the following scale:

| | |
|---|---|
| Normal functioning | 1.0 |
| Gifted | 1.5 |
| Slow learners | 1.75 |
| Bilingual | 1.75 |
| Chronic Absentee | 1.5 |
| Reading Disability | 2.0 |
| Hearing Disability | 2.0 |
| Physical Disability | 2.0 |
| Disciplinary Problems | 2.0 |
| Significantly limited intellectual capacity | 2.0 |
| Non English speaking | 2.5 |
| Emotionally Disturbed | 2.5 |
| Perceptual and communication disorder | 2.5 |
| Hyperactive | 2.5 |
| Lab classes | 2.0 |

2) Student contact ranges shall not apply to band, chorus, Orchestra, Title I, CODY, Itinerate Special Services, Library, Guidance, and Nurses.

The deputy director of the Department of Labor found that these amendments were not proposals or materials which materially affect working conditions, wages or hours of employment and concluded that they dealt with matters that would significantly interfere with the exercise of District's inherent management prerogatives. Relying upon our decision in *Aberdeen Education Ass'n v. Aberdeen Bd. of Education, Aberdeen Ind. School Dist.*, 88 S.D. 127, 215 N.W.2d 837 (1974), the circuit court affirmed the Department's decision.

SDCL 3–18–3 provides in part:

Representatives designated or selected for the purpose of formal representation by the majority of the employees in a unit appropriate for such purposes shall

be the exclusive representatives of all employees in such unit for the purpose of representation in respect to rates of pay, wages, hours of employment, or other conditions of employment[.]

In *Aberdeen Education Ass'n, supra,* we held that "the term 'other conditions of employment' as used in SDCL 3–18–3 means conditions of employment which materially affect rates of pay, wages, hours of employment and working conditions[.]" 88 S.D. at 133, 215 N.W.2d at 841. We held that as so defined, SDCL 3–18–3 did not require that a school board negotiate with respect to elementary conferences, teachers' aides, elementary planning, class size, audio-visual expansion, budget allowances, school-wide guidance and counseling program, and mandatory retirement of administrators.

Upon further reflection, we conclude that our holding in *Aberdeen Education Ass'n* was too restrictive and should be reconsidered.

We conclude that the analysis applied by the Supreme Court of New Jersey in *In re Local 195, IFPTE, AFL–CIO v. State,* 88 N.J. 393, 443 A.2d 187 (1982), represents a thoughtful, workable response to the competing interests of employees and employers in the public sector. As the New Jersey Supreme Court pointed out, the state is different from a private employer inasmuch as it has the unique responsibility to make and implement public policy. Accordingly, the scope of negotiations in the public sector is more limited than in the private sector. *Id.* 443 A.2d at 191. The court went on to define the role of the judiciary in cases involving the scope of negotiations:

The role of the courts in a scope of negotiations case is to determine, in light of the competing interests of the State and its employees, whether an issue is appropriately decided by the political process or by collective negotiations. In making this sensitive determination, the mere invocation of abstract categories like "terms and conditions of employment" and "managerial prerogatives" is not helpful. To determine whether a subject is negotiable, the Court must balance the competing interests by considering the extent to which collective negotiations will impair the determination of governmental policy."

88 N.J. at 402, 443 A.2d at 191 (footnote omitted).

Under the New Jersey analysis, a three-part test is employed in scope of negotiations determinations:

First, a subject is negotiable only if it "intimately and directly affect[s] the work and welfare of public employees...."

....

Second, an item is not negotiable if it has been preempted by statute or regulation....

Third, a topic that affects the work and welfare of public employees is negotiable only if it is a matter "on which negotiated agreement would not *significantly* interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy.

88 N.J. at 403, 443 A.2d at 191–92 (emphasis in original).

■ We conclude that the New Jersey three-part test provides a more meaningful standard by which to determine claims of negotiability than does the rather conclusory, truncated test that we adopted in *Aberdeen Education Ass'n, supra,* and we therefore adopt it as our own. For other cases adopting a more expansive view of what educational policies are negotiable, *see, e.g., Foley Ed. Ass'n v. Independent School Dist. No. 51,* 353 N.W.2d 917 (Minn. 1984); and *City of Beloit, Etc. v. Wis. Employment, Etc.,* 73 Wis.2d 43, 242 N.W.2d 231 (1976). To the extent that our holding in *Aberdeen Education Ass'n* is inconsistent with the New Jersey test, that case is overruled.

■ When measured against the three-part test, Association's proposals E through H are proper subjects of negotiations under SDCL 3–18–3 in that the matters sought to be negotiated relate to sub-

jects which fall within the categories of rates of pay, wages, hours of employment, and other conditions of employment. In a word, the items contained within categories E through H intimately and directly affect the work and welfare of Association's members. We do not believe that any of those items have been preempted by statute or regulation. Finally, the matters sought to be negotiated would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of school policy. True, the items sought to be negotiated will have an impact upon the District's budget, but no more so than the items that are presently negotiable under the *Aberdeen Education Ass'n* test of negotiability.

█ With respect to item I, however, we conclude that the weighted student contacts proposed by Association significantly impinges upon the exercise of District's inherent management prerogatives concerning the determination of school policy inasmuch as they relate to the sensitive subject of classifying students according to their abilities and disabilities, which we believe is a matter entrusted solely to the discretion of a school board acting through its appointed administrative officials.

The order appealed from is reversed and the case is remanded to the circuit court with directions to direct the Department of Labor to enter an appropriate order not inconsistent with the views set forth in this opinion.

MORGAN, J., and WUEST, Circuit Judge, acting as a Supreme Court Justice, concur.

HENDERSON, J., concurs specially.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, not participating.

HENDERSON, Justice (specially concurring).

### PROCEEDINGS BELOW/SCOPE OF REVIEW

Appellant filed an Unfair Labor Practice Complaint which led to a decision of the Department of Labor consisting of findings of fact and conclusions of law. The Department of Labor concluded that the proposals, set forth in the majority opinion, were not mandatorily negotiable and thus dismissed the Unfair Labor Practice Complaint. The rationale of the Department of Labor was that the proposals by appellant did not materially affect working conditions or wages or hours of employment; the Department of Labor also reasoned that the appellant's proposals would significantly interfere with the exercise of inherent management prerogatives concerning the appellee's power to determine governmental policy.

The decision of the Department of Labor was affirmed by the circuit court, the circuit court likewise holding that the aforementioned proposals were not "other conditions of employment" within the ambit of statutory language, i.e., SDCL 3–18–3. The circuit court likewise determined and held that it was not convinced that a mistake had been committed or the Department's decision was against the clear weight of the evidence.

As I review this record, I cannot see where there is any great dispute over any facts. Rather, with the facts spread on the record, the parties cannot agree on an application of the facts to the existing law, namely, the *Aberdeen Education Ass'n* case, decided in 1974 in this Court, cited in the majority opinion. It is my opinion that this Court, which it has not done in the majority opinion, must review the decision below to determine whether or not the decision of the South Dakota Department of Labor was clearly erroneous. We must ask ourselves whether or not the agency below, affirmed by the circuit court, erred as a matter of law in its application of the facts to the existing law.

### MERITORIOUS APPEAL

This is a meritorious appeal, in my opinion, under SDCL 1–26–36(4) and (5). I believe the *Aberdeen Education Ass'n* case is distinguishable. The proposals here,

made by this education association, do not appear to me to restrict any prerogative of management to set class size, determine class schedules, or assign students or teachers to particular classes. Rather, the proposals are designed to provide compensation for those teachers who, because of the exercise of the board's prerogative, have been asked or would be asked to perform more work for the same amount of pay. Therein lie the crucial difference in the *Aberdeen Education Ass'n* case and this case. If one reads through these proposals carefully, one will note that each one provides for "annual compensation," i.e., they pertain to money and pay. Thus, when the Department of Labor found as a fact that the proposals submitted by appellant were not proposals or matters which materially affected working conditions or wages or hours of employment, the agency was clearly erroneous as a matter of law.

A fair reading of these proposals reflects that appellant association was not asking to negotiate the class sizes or the makeup in teaching load but, rather, the "annual compensation." I cannot see where the management prerogative was stripped away from the school district. There is no question or doubt that these proposals impact the budget. Can it therefore be logically said that impacting the budget spills over into a concept that management prerogative has been tainted? I think not. The budget is surely a topic which must be left open to the democratic decision. But the fair wage for hours in classroom teaching and preparation for teaching is simply addressing the payment for the amount of work done. Surely, that is protected and is a negotiable item. These proposals, E through H, are not proposals which significantly interfered with the exercise of the inherent management prerogative. Thus, the Department of Labor was clearly erroneous, as a matter of law, in its decision to the contrary.

Finally, I wish to state that the New Jersey authority was either implicitly adopted or applied by this Court in the *Aberdeen Education Ass'n* case. In these type of cases, the proposals for negotiation must be reviewed on a case-by-case basis. We must concern ourselves, as we review and test these proposals, in the light of "whether the dominant concern involves an educational goal or the work and welfare of the teachers." *Ramapo-Indian Hills Educ. Ass'n v. Ramapo-Indian Hills Regional High Sch. Dist. Bd. of Educ.*, 176 N.J.Super. 35, 43, 422 A.2d 90, 94 (1980). Viewing these various proposals, in futuro, should they pertain to an educational goal, they should not be negotiable and are strictly a part of the democratic process; if, on the other hand, they involve the work and welfare of the teachers, so far as their pay, wages, hours of employment, or working conditions of employment are concerned, they should be negotiable. There is no finite line. We perceive two theories of attainment confronting one another in these type of cases. We behold two conflicting goals, i.e., managerial rights versus employee rights. In *Ramapo*, 176 N.J.Super. at 43, 422 A.2d at 94, quoting an earlier case, the court expressed this sensitive, legal tightwire as follows:

> Logically pursued, these general principles—managerial prerogatives and terms and conditions of employment—lead to inevitable conflict. Almost every decision of the public employer concerning its employees impacts upon or affects terms and conditions of employment to some extent. While most decisions made by a public employer involve some managerial function, ending the inquiry at that point would all but eliminate the legislated authority of the union representative to negotiate with respect to "terms and conditions of employment." Conversely to permit negotiations and bargaining whenever a term and condition is implicated would emasculate managerial prerogatives. (Citations omitted.)

I also agree with that portion of the majority opinion holding that item I is not a mandatory subject of negotiation, for it significantly interferes with management prerogatives.

Accordingly, I specially concur and would likewise reverse and remand in this administrative appeal believing that the scope of review in this case must, of necessity, be addressed.