**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2993-22

IN THE MATTER OF
UNION COUNTY COLLEGE,

    Petitioner-Appellant,

and

UNION COUNTY COLLEGE
CHAPTER OF THE AMERICAN
ASSOCIATION OF
UNIVERSITY PROFESSORS
(AAUP),

    Respondent-Respondent.

_____

NEW JERSEY PUBLIC
EMPLOYMENT RELATIONS
COMMISSION,

    Respondent.

_____

Argued June 4, 2024 – Decided July 3, 2024

Before Judges Gooden Brown and Puglisi.

On appeal from the New Jersey Public Employment Relations Commission, Docket No. SN-2023-002.

Matthew Joseph Giacobbe argued the cause for appellant (Cleary Giacobbe Alfieri Jacobs LLC, attorneys; Matthew Joseph Giacobbe, of counsel and on the briefs; Jessica Vanessa Henry, on the briefs).

Carl Levine (Levy Ratner, PC) argued the cause for respondent Union County College Chapter of the American Association of University Professors.

John Andrew Boppert, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Christine R. Lucarelli, General Counsel, attorney; John Andrew Boppert, on the statement in lieu of brief).

PER CURIAM

Petitioner Union County College (College) appeals from the April 28, 2023, final determination of the Public Employment Relations Commission (PERC) effectively denying its request to restrain arbitration of a grievance filed by respondent Union County College Chapter of the American Association of University College Professors (AAUP).  We reverse.

In Union County College v. Union County College Chapter of the American Ass'n of University Professors, No. A-3564-19 (App. Div. May 13, 2022), we detailed the underlying dispute which we will not recite at length here. To briefly recapitulate, the College appealed from the

2

Chancery Division order confirming the December 23, 2019[,] arbitration award prohibiting the assignment of Associate Professor JoAnne Kennedy to the College's Academic Learning Center (ALC) and denying [the College's] application to vacate the award. [AAUP] is an employee representative within the meaning of the New Jersey Employer-Employee Relations Act (EERA), N.J.S.A. 34:13A-1 to -39, and represents "all full-time instructional and professional library staff" employed by plaintiff, including Kennedy. [The College] and [AAUP] are parties to the collective negotiations agreement (CNA) underlying the appeal.

After [the College] assigned Kennedy to the ALC, [AAUP] filed a grievance on her behalf, alleging [the College] violated various provisions of the CNA. The matter proceeded to arbitration, resulting in an arbitration award in [AAUP's] favor. Following the adverse ruling, [the College] filed a complaint in the Chancery Division seeking to vacate the award. Among other things, [the College] argued that because it has the non-negotiable—and thus non-arbitrable—managerial prerogative to determine faculty assignments, the matter should be sent to [PERC] for a scope of negotiations determination. Given [the College's] failure to file a scope of negotiations petition with PERC before proceeding to arbitration, the trial court rejected [the College's] request and confirmed the award. We vacate[d] the court's order and transfer[red] the matter to PERC.

[Id. at 1-2 (footnote omitted).]

We explained that "PERC is charged with administering the EERA and has '"primary jurisdiction"' to determine '"whether the subject matter of a particular dispute is within the scope of collective negotiations."'" Id. at 16-17

3

(quoting In re Cnty. of Atl., 445 N.J. Super. 1, 20 (App. Div. 2016)). We pointed out that "[a]lthough [the College] did not file a scope petition with PERC before arbitration, it presented the defense to the arbitrator and the judge," and "'no case has held that the failure of an employer to file a pre-arbitration scope of negotiations petition, standing alone, automatically precludes a post-arbitration challenge to an arbitration award based on scope of negotiations considerations.'" Id. at 21 (quoting In re Twp. of Ocean Bd. of Educ., P.E.R.C. No. 83-164, 9 N.J.P.E.R. ¶ 14181, at 7, 1983 WL 862922 (1983)).

Thus, we reasoned that despite the procedural posture of the case, "the preservation of PERC's primary jurisdiction over scope of negotiations issues require[d] transfer of the scope issue to PERC." Id. at 22-23. In stressing that our cases endorse such a procedure, we stated:

> In [City of Newark v. Newark Council 21, Newark Chapter, New Jersey Civil Service Ass'n, 320 N.J. Super. 8 (App. Div. 1999)], Judge Pressler explained,
>
>> it has long been settled that where grievance arbitration of a particular matter is challenged by the public employer on the ground that the subject of the grievance constitutes a management prerogative and is hence not negotiable in the first instance, the jurisdiction of PERC is primary and the trial court should defer to PERC.

A-2993-22

[Union Cnty. Coll., slip op. at 22-23 (quoting City of Newark, 320 N.J. Super. at 17).]

On July 28, 2022, the College filed a scope of negotiations petition with PERC seeking an order restraining arbitration and voiding the December 23, 2019, arbitration award sustaining the grievance. PERC is comprised of seven members, see N.J.S.A. 34:13A-4, but two of the seats were vacant at the time of the vote and one of the five seated commissioners recused himself from participating in the decision. The vote of the remaining four commissioners on PERC's draft decision essentially upholding the College's position that its decision with respect to Kennedy "preeminently concern[ed] matters of educational policy that [were] not mandatorily negotiable" ended in "an unbreakable tie."[1] Under PERC's protocol, the tie vote resulted in the Commission's inability "to take any action on the College's scope petition" and effectively functions as a denial of the request to restrain arbitration. See Commission's Notice to Interested Parties, Resolving Tie Votes in Certain Scope of Negotiation Cases (Dec. 23, 2014), https://www.nj.gov/perc/documents/ProtocolResolvingVotes.pdf (establishing that to resolve tie votes due to the recusal of one or more commissioners, "the

---

[1] On July 24, 2023, we granted the College's motion to supplement the record with the draft decision.

Commission's final action is either an interim or recommended decision made by a Commission designee or officer (e.g. Hearing Examiner) or the status quo of the parties' dispute that existed at the time the proceeding before the Commission was initiated"). Thus, PERC's failure to render a decision based on its tie-vote protocol effectively rendered the College's scope petition rejected and returned the parties to the status quo under the arbitration award.

In this ensuing appeal, the College maintains that its decision "to transfer and assign personnel" is a "'managerial duty'" and "involve[s] matters of educational policy," thus rendering the decision "neither negotiable nor arbitrable." (quoting Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 156 (1978)). The College reasons that neither "managerial prerogative" nor "responsibility for educational policy" can be "contract[ed] away," and our courts have "uph[eld] a [c]ollege's unfettered right" to assign and deploy its personnel in promotion of its educational objectives.

AAUP counters that the College's decision affects Kennedy's "terms and conditions of employment" and constitutes only a "de minimis impingement" on "the College's managerial prerogatives." Specifically, AAUP challenges the College's "full-time, semester-long assignment [of Kennedy] to the ALC" because it is "a non-teaching assignment" that falls outside Kennedy's "defined

job duties" and "affects [Kennedy's] working conditions." Further, AAUP suggests that, as noted by the arbitrator, the College's reassignment of Kennedy to the ALC was disciplinary in nature and thus arbitrable.

We will not overturn PERC's determinations "in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated a legislative policy expressed or implicit in the governing statute." Commc'ns Workers of America, Loc. 1034 v. N.J. State Policemen's Benevolent Ass'n, Loc. 203, 412 N.J. Super. 286, 291 (App. Div. 2010) (internal quotation marks omitted) (quoting In re Camden Cnty. Prosecutor, 394 N.J. Super. 15, 22-23 (App. Div. 2007) (emphasis omitted)). However, when PERC's decision is an interpretation of a statute or a determination of "a strictly legal issue," we review the determination de novo. In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020) (internal quotation marks omitted) (quoting Saccone v. Bd. of Trs., PFRS, 219 N.J. 369, 380 (2014)). Because PERC did not reach the merits of the College's scope of negotiations petition, we employ a de novo standard of review.

In adopting the EERA, N.J.S.A. 34:13A-1 to -64, the Legislature recognized public employees' "legitimate interest in engaging in collective negotiations about issues that affect 'terms and conditions of employment.'"

7

Loc. 195, IFPTE, AFL-CIO v. State, 88 N.J. 393, 401 (1982) (quoting N.J.S.A. 34:13A-5.3).  However, unlike their private-sector counterparts, the "scope of negotiations" for public sector employees "is more limited" due to government's "unique responsibility to make and implement public policy."  Id. at 401-02; see also, e.g., Bd. of Educ. of Woodstown-Pilesgrove Reg'l Sch. Dist. v. Woodstown-Pilesgrove Reg'l Educ. Ass'n, 81 N.J. 582, 588 n.1 (1980); Ridgefield Park Educ. Ass'n, 78 N.J. at 162.

As a result, subjects of public employment negotiation are deemed to be either "'mandatorily negotiable terms and conditions of employment [or] non-negotiable matters of governmental policy.'"  Loc. 195, 88 N.J. at 402 (quoting Ridgefield Park Educ. Ass'n, 78 N.J. at 162).  In Local 195, our Supreme Court reiterated a three-part test for determining the scope of negotiations, explaining that

> a subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy.  To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer.  When the dominant concern is the government's managerial

> prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions.
>
> [Id. at 404-05.]

The College urges non-negotiability under the third prong of the Local 195 standard. Several cases inform the discussion of whether the reassignment of a member of the faculty at an educational institution falls within "'the exercise of inherent management prerogatives pertaining to the determination of governmental policy.'" Id. at 404 (quoting Paterson Police PBA Loc. v. City of Paterson, 87 N.J. 78, 86 (1981)). In Board of Education of City of Englewood v. Englewood Teachers Ass'n, 64 N.J. 1 (1973), our Supreme Court reconciled provisions of this State's education law (Title 18A) with the EERA. Id. at 6-7. There, the Englewood Board of Education employed four special education teachers who customarily worked between 8:45 a.m. and 1:30 p.m. Id. at 3. Students attended school from 9 a.m. to 3 p.m., and non-special education teachers worked between 8:45 a.m. and 3:15 p.m. Ibid. Nothing in the teachers' written agreement distinguished between special education teachers and non-special education teachers. Id. at 3-4. Ultimately, the Englewood Board of Education unilaterally lengthened the four special education teachers' hours to

9

match those of the other teachers "without any additional compensation." Id. at 4.

Through their union, the Englewood Teachers Association, the four special education teachers filed grievances and sought arbitration under the agreement. Id. at 4-5. In response, the Board filed a complaint in the Chancery Division seeking to restrain arbitration. Id. at 3. In reversing the Chancery Division's judgment restraining arbitration, our Supreme Court explained that "the hours and compensation of the individual grievant teachers were suitable for negotiation and grievance procedures including ultimate arbitration as provided for in the Englewood agreement." Id. at 7-8. The Court reasoned that "the Association . . . s[ought] nothing more than contractual interpretations which would . . . preclude unilateral uncompensated extension of the working hours of the four special education teachers." Id. at 8. Therefore, "[t]h[ose] interpretations would directly and most intimately affect the employment terms and conditions" of the teachers "without affecting any major educational policies," and "would appear to be eminently suitable for arbitral determination." Ibid.

In a parallel decision, the Court determined that a local board of education's determination "that it would be educationally desirable to

consolidate [two chairmanships] into a newly created [chairmanship]" was "not a proper subject of either arbitration or mandatory negotiation under N.J.S.A. 34:13A-5.3." Dunellen Bd. of Educ. v. Dunellen Educ. Ass'n, 64 N.J. 17, 29, 31 (1973). The Dunellen Court held that the consolidation "represents a matter predominantly of educational policy within management's exclusive prerogatives" and "had no effect, or at most only remote and incidental effect, on the 'terms and conditions of employment' contemplated by N.J.S.A. 34:13A-5.3." Id. at 29-30. See also Burlington Cnty. Coll. Fac. Ass'n v. Bd. of Trs., 64 N.J. 10, 16 (1973) (holding that "the college calendar is not a proper subject of mandatory negotiation and that the lower court's holding to the contrary was erroneous").

We applied these principles in Ramapo-Indian Hills Education Ass'n v. Ramapo Indian Hills Regional High School District Board of Education, 176 N.J. Super. 35 (App. Div. 1980), stressing that "[t]he days and hours of work by individual teaching staff members, their workloads and compensation are traditionally negotiable terms and conditions of employment." Id. at 42 (citing Burlington Cnty. Coll. Fac. Ass'n, 64 N.J. at 14); see also Bd. of Educ. of Woodstown-Pilesgrove, 81 N.J. at 589; Englewood Bd. of Educ., 64 N.J. at 6-7.

> However, the mere fact that the subject of negotiations
> concerns hours, workload and compensation does not

11

in itself make them mandatorily negotiable terms and conditions of employment. To be mandatorily negotiable, the terms and conditions of employment must not "'significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of government policy.'"

[Ramapo-Indian Hills Educ. Ass'n, 176 N.J. Super. at 42-43 (citation omitted) (quoting Bd. of Educ. of Woodstown-Pilesgrove, 81 N.J. at 590-91).]

In Ramapo-Indian Hills, we determined that a local board of education's decision to combine a music teacher's position with the responsibilities of an extracurricular band director was within its "managerial prerogative" and arbitration concerning the "after-school working hours could affect the quality of these musical activities and would preclude the exercise of the managerial prerogative to assign personnel." Id. at 47. Therefore, we separated the issue of "hours of employment [and] workload" from "compensation," and held that the former was not "mandatorily negotiable," but the latter was arbitrable. Id. at 48-49.

When considering the competing interests of the State and its employees, our courts "weigh[] [and] balanc[e]" the "terms and conditions of employment" in relation to "their interference with managerial prerogatives." Bd. of Educ. of Woodstown-Pilesgrove, 81 N.J. at 591. "[T]erms and conditions of employment are those matters which intimately and directly affect the work and welfare of

public employees and on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy." State v. State Supervisory Emps. Ass'n, 78 N.J. 54, 67 (1978). On the other hand, "[w]hen the dominant issue is an educational goal, there is no obligation to negotiate and subject the matter, including its impact, to binding arbitration" even if it "may affect or impact upon the employees' terms and conditions of employment." Bd. of Educ. of Woodstown-Pilesgrove, 81 N.J. at 591.

In Board of Education of Township of Bernards v. Bernards Township Education Ass'n, 79 N.J. 311 (1979),

> the dispute involved the withholding of a teacher's salary increment by a board of education "for inefficiency or other good cause." N.J.S.A. 18A:29-14. Clearly the increment directly affected a fundamental term of the teacher's employment, his compensation. However, the board's decision concerned the quality of the educational system and was an "essential managerial prerogative" which outweighed the impact on the individual's term of employment. Accordingly, it was held that the decision to withhold the incentive pay increase from a particular teacher could not be bargained away.
>
> [Bd. of Educ. of Woodstown-Pilesgrove, 81 N.J. at 591-92 (citation omitted) (quoting Bd. of Educ. of Twp. of Bernards, 79 N.J. at 321).]

Most illuminating, however, is the Court's decision in <u>Ridgefield Park</u> <u>Education Ass'n</u>, where a teacher objected to a transfer. 78 N.J. at 150-51. There, the Court wrote:

> The selection of the school in which a teacher works or the grade and subjects which he teaches undoubtedly have an appreciable effect on his welfare. However, even assuming that this effect could be considered direct and intimate, we find that this aspect of the transfer decision is insignificant in comparison to its relationship to the Board's managerial duty to deploy personnel in the manner which it considers most likely to promote the overall goal of providing all students with a thorough and efficient education. Thus, we find that the issue of teacher transfers is one on which negotiated agreement would significantly interfere with a public employer's discharge of inherent managerial responsibilities. Accordingly, it is not a matter as to which collective negotiation is mandatory.
>
> [<u>Id.</u> at 156.]

Such cases have led to the recognition that "decisions to hire, retain, promote, transfer, assign and dismiss are not negotiable." <u>Rutgers, State Univ.</u> <u>v. Rutgers Council of AAUP Chapters</u>, 256 N.J. Super. 104, 116 (App. Div. 1992); <u>see also</u> <u>Council of N.J. State Coll. Locs. v. State Bd. of Higher Educ.</u>, 91 N.J. 18, 32-33 (1982) (explaining that "the public employer's substantive decision to transfer or assign employees" "constitutes inherent managerial prerogatives" (emphasis omitted)).

A-2993-22

Here, the College is a public educational institution with a mandate to ensure its students' academic success. As such, its governing body must make decisions "critical to the [College's] goal of excellence in the quality of its faculty and its overriding concern for quality of education offered its students." Rutgers, State Univ., 256 N.J. Super. at 108. To that end, the College is committed to supporting its students' ability to matriculate, advance through their courses, and graduate.

Kennedy, as an employee of the College, furthers that educational objective through her work as an associate professor. As we recounted in our unpublished opinion, when Kennedy's performance as an instructor came into question "based on student complaints, requests to withdraw from her classes, and completion rates that were consistently lower than her peers," the College was obligated to examine whether her then assignment best fit its educational objectives and policy. Union Cnty. Coll., slip op. at 9. As a result, it was determined that for the sake of the College, the students, and Kennedy's teaching performance, Kennedy would be transferred to the ALC "as her full-time assignment." Id. at 7.

"[T]he ALC 'offer[ed] tutoring support and academic support for students . . . enrolled in classes at the college,'" id. at 8 (omission and second

alteration in original), thereby assisting students in successfully completing their courses and graduating. As such, the ALC is an important component for students' success at the College. Critically, "similar to a faculty member teaching a course, assignment to the ALC concluded once 'final exams [were] concluded' for the semester," id. at 9 (alteration in original), and there was no change in Kennedy's compensation.

The College transferred Kennedy and altered her duties based on what it believed positively impacted the academic quality of the institution. Indeed, the proffered purpose for Kennedy's transfer promoted the College's educational policy and objectives.[2] Unlike Englewood, the College's decision did not affect Kennedy's full-time status, 64 N.J. at 7-8, and unlike Ramapo-Indian Hills, Kennedy's compensation was not altered, 176 N.J. Super. at 48-49. Although AAUP argues the assignment violated the CNA in relation to instructional hours, the argument relates to the duties of the position, rather than the compensable

---

[2] Although AAUP asserts the College's purpose in transferring Kennedy was disciplinary in nature, the arbitrator made no such finding and there was no reduction in salary or rank. See N.J.S.A. 34:13A-27 (granting PERC "the authority to take reasonable action to effectuate the purposes of [the EERA]" if it "determines that the basis for a transfer is predominately disciplinary"); see also N.J.S.A. 34:13A-22 (defining "discipline" as "all forms of discipline, except tenure charges filed pursuant to . . . N.J.S.A. 18A:6-10 . . . , or the withholding of increments pursuant to N.J.S.A. 18A:29-14").

hours of her employment.  Cf. 176 N.J. Super. at 48-49.  Because "the issue of teacher transfers is one on which negotiated agreement would significantly interfere with a public employer's discharge of inherent managerial responsibilities," Kennedy's transfer is neither negotiable nor arbitrable. Ridgefield, 78 N.J. at 156.  Accordingly, we reverse and remand to PERC to enter an order restraining arbitration concerning Kennedy's assignment to the ALC, notwithstanding PERC's tie-vote.

To the extent we have not specifically addressed a specific argument, we conclude our disposition makes it unnecessary or the argument lacks sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Reversed and remanded for entry of an order restraining arbitration.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION