Dale FRASER, Lawrence Larson, Wilber Mathis, Lawrence Meoska, Clyde Olson, Marx Stange, and William Rake, Appellees,

v.

WATER RIGHTS COMMISSION OF the DEPARTMENT OF NATURAL RESOURCE DEVELOPMENT, an Agency of the State of South Dakota, and Dennis C. Decker, Marian B. Gunderson, Wendell H. Hanson, Raymond D. Rylance, and Merwyn H. Walter, as members of such Commission, Appellants,

and

Carl Estabrook, Intervenor.

No. 13026.

Supreme Court of South Dakota.

Argued May 22, 1980.

Decided July 9, 1980.

Tom D. Tobin, Tobin Law Office, Winner, for appellees; Joseph E. Ellingson of Tobin Law Office, Winner, on brief.

Roxanne Giedd, Asst. Atty. Gen., Pierre, for appellants; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

DUNN, Justice.

This action involves the circuit court's reversal of the Water Rights Commission granting water right permit No. 4405–3 to Carl Estabrook. We affirm.

For the purpose of clarity, the Water Rights Commission shall be designated "Commission"; the staff of the Commission (the Division of Water Rights of the Department of Natural Resources) shall be designated "Division"; and the State Conservation Commission shall be designated "Conservation Commission."

Carl Estabrook submitted an application to the Commission to appropriate water from the Niobrara Chalk formation in December, 1976. Water sample No. 76–073 was submitted to the Conservation Commission for soil/water compatibility approval and determined to be "unsuitable." Although the present standards for soil/water compatibility were not in effect, Estabrook was informed by Dr. L. O. Fine of the Water Quality Lab that "sample # 76–073 is totally unfit for irrigation" and that "within 10 years using this water you would rapidly degrade this soil to the point of little value as crop land." However, an irrigation permit was approved by the Conservation Commission.

The Commission subsequently granted Estabrook a one-year experimental permit, No. 3435–3, at its January 26, 27, 1977, meeting. The experimental permit was for irrigating 220 acres of land located in the Southeast Quarter, East Half of the Southwest Quarter and South Half of the Northeast Quarter of Section 6, Township 104 North, Range 63 West, Aurora County, South Dakota. The location of the well from which the water was to be diverted for irrigating these lands was listed as 2,000 feet west and 1,000 feet north of the southeast corner of the Southeast Quarter of Section 6, Township 104 North, Range 63 West.

The purpose of the experimental permit was to allow pumping for one year so that the results could be monitored. The experimental permit contained the following qualifications:

1. In no case is a diversion rate to exceed the application diversion rate of 2.22 cfs of water.

2. It is your responsibility to restrict, if necessary a diversion of water from the well so there is not a reduction of needed water supplies in existing domestic wells, dugouts, springs or other sources of water that would be affected by your diversion of water.

3. Diversion of water during the experimental period shall be in accordance with any written orders issued by a representative of the Water Rights Commission.

After the permit was granted, the Division received a report that Estabrook was planning to irrigate lands other than those listed on the experimental permit. Mr. Estabrook was advised that in order to irrigate lands other than those covered by the experimental permit, he would have to reapply and readvertise for that particular land and diversion.

Mr. Estabrook was later told that he would be allowed to irrigate lands in the Northeast Quarter of Section 6, Township 104 North, Range 63 West that were not included in the experimental permit, since the land had been requested under a deferred application, No. 2863–3. This was allowed in spite of the fact that the Commission had received petitions signed by 122 area residents opposing the application. Estabrook was allowed to irrigate this land from a Niobrara Chalk formation well although no water sample was submitted to the Conservation Commission for soil/water compatibility approval, as required by SDCL 46–5–6.2.

Mr. Estabrook began pumping the evening of June 17, 1977. On June 22, five

days later, the staff of the Commission began to receive reports that area residents were having problems with their domestic wells. A total of fifteen domestic wells were reported to be out of water and there were reports of others pumping air and/or muddy water. On June 23, 1977, it was discovered that Estabrook had installed a 1,600 gpm pump rather than a 1,000 gpm pump which was authorized by the experimental permit.

Due to the effect on the domestic wells in the area, Estabrook was ordered to cease pumping until "nearby domestic wells which have been determined to be out of water as the result of your irrigation pumping have been repaired or changed so as to provide sufficient domestic water when your irrigation well is pumping." In addition, because too large a pump was installed, any further pumping was reduced from twenty-four hours per day to fifteen hours per day.

Corrections were made by Estabrook to nine of the domestic wells by adding lengths of pipe, lowering cylinders and jets, and in two instances, drilling new wells. However, not all affected wells were corrected by Estabrook, and not all of the corrections made eliminated the problems caused by the pumping. Estabrook was allowed to pump after corrections were made to certain domestic wells until July 27, 1977, when the Commission ordered that pumping of the Estabrook well under experimental permit No. 3435–3 be discontinued. Pumping from the Estabrook irrigation well was not resumed for the remainder of 1977, and the Commission, at the January 1978 meeting, withdrew the chalk formation in which Estabrook's well was located from further appropriation.

On February 8, 1978, Estabrook submitted an application to the Commission for appropriations from the Niobrara Chalk formation. Water sample No. 78–065 was submitted to the Conservation Commission for soil/water compatibility approval. An irrigation permit, Form W1 # 1, was conditionally approved by the Conservation Commission for:

North Eighty of the Northeast Quarter of Section Six, Township One Hundred Four, Range Sixty-Three; and,

Forty-Five of the West Quarter of Section Five, Township One Hundred Four, Range Sixty-Three.

The well used to irrigate this land was located in the Southeast Quarter of the Northeast Quarter of Section 6, Township 104, Range 63. The application for an irrigation permit was conditionally approved because the water and soil was marginal in nature and because a possibility existed for land damage. Because of this, the conditional approval of the irrigation permit was based on the following:

1. That salt buildup cannot be greater than 3000 micromhos per centimeter cubed in the upper twelve inches of soil at the beginning of the growing season;

2. That sodium buildup cannot be greater than eight percent sodium saturation in the upper twelve inches of soil at the beginning of the growing season[.]

The application for a water right was not advertised since the chalk formation in which the well was located had been withdrawn from further appropriation.

At the March 28–29, 1979, meeting of the Commission it was decided to rescind the action taken at the January, 1978, meeting withdrawing the chalk formation from further appropriation. Estabrook had noticed application No. 3435–3 for the meeting, but the Commission decided not to act on it because it was not for land where the center pivot was actually located. The Commission was informed that a new application had been submitted approximately one year earlier to correct the land descriptions, and that the intention of the application was to clarify the matter. Since neither application No. 3435–3 nor the application submitted on February 8, 1978, contained descriptions of all the land where the center pivot was located, Estabrook was instructed to group the two applications together for approval and prepare a new application covering all the land for the proposed irrigation system.

On May 3, 1979, the Conservation Commission held an informal meeting to investigate allegations involving Estabrook's water sample No. 78–065. This meeting was the result of petitions from Aurora County residents requesting the Conservation Commission to take an additional sample from Estabrook's well for the purpose of validating the sample submitted. The basis of the petitions was that all of the water samples taken from other wells in the area, which drew water from the same aquifer, were determined to be "unsuitable" or "absolutely unsuitable" for irrigation by the Water Quality Laboratory in Brookings, South Dakota. In addition, a later sample taken by the United States Geological Survey from Estabrook's irrigation well indicated that the water quality was far below the allowable standards for conditional approval of an irrigation permit. As a result of this meeting, the Conservation Commission and Estabrook agreed to add the following conditions to Estabrook's irrigation permit:

1. That the soils be monitored yearly by the Division of Conservation, Department of Agriculture, at the sites and depths shown on the attached sheet. The date of the soils sampling will be determined by the Division;

2. That the crops grown be checked for boron toxicity by tissue tests and by visual observation by the Division of Conservation, Department of Agriculture, during the growing season. The date of this crop sampling and observation will be determined by the Division; and,

3. That the Division of Conservation, Department of Agriculture, obtain water samples several times during the pumping so that water quality may be monitored. Four to six water samples will be taken at dates to be determined by the Division.

Estabrook advertised an application for the Commission's May 24, 1979, meeting. This "new application" listed the following land:

North Seventy-Five of the Northeast Quarter of Section Six, Township One Hundred Four, Range Sixty-Three;

West Quarter of Section Five, Township One Hundred Four, Range Sixty-Three;

Northeast Quarter of Section Six, Township One Hundred Four, Range Sixty-Three;

West Half of the Northwest Quarter of Section Five, Township One Hundred Four, Range Sixty-Three;

North Half of the Southeast Quarter of Section Six, Township One Hundred Four, Range Sixty-Three; and,

Northwest Quarter of the Southwest Quarter of Section Five, Township One Hundred Four, Range Sixty-Three.

During the presentation of this application, the Division explained to the Commission:

This application is to correct a previous application that was made. This application will get the well location where it is actually at, and correct lands to be irrigated under the center pivot that is already there. It is a *new application* before the Commission. It was originally received February 8, 1978. At that time it was left filed because the formation had been withdrawn from further appropriation. When the formation was placed back into a status where water could be appropriated the application was advertised. (Emphasis added.)

Ms. Sudtelote, a member of the staff from the Conservation Commission, explained to the Commission the action taken by the Conservation Commission at the May 3, 1979, meeting. Ms. Sudtelote stated that the Conservation Commission had been petitioned to take a new water sample for the purpose of validating water sample No. 78–065 submitted by Estabrook. Although a later sample taken by the United States Geological Survey indicated that the water quality from the irrigation well was substantially worse than indicated on water sample No. 78–065, the Conservation Commission decided that it could not go back on its original approval, and it made more conditional amendments. She also stated that the Conservation Commission did not know

that it was considered to be a new application by the Commission.

Ms. Sudtelote also told the Commission that the more recent sample would not have been approved if it would have been a new application, and that the United States Geological Survey sample indicated that the water was "definitely unfeasible to irrigate with." She further stated, "that according to their Rules and Regulations the water is definitely unsuitable for irrigation."

At the end of the hearing, the Commission granted Estabrook's permit No. 4405–3. On June 27, 1979, the Commission entered its findings of fact and conclusions of law, thereby rendering a final decision on permit No. 4405–3. The Commission based its approval of the application on the following: (1) That application No. 4405–3 was an amended old application; (2) that the State Conservation Commission had approved all the land listed on application No. 4405–3; and (3) that approval of application No. 4405–3 is for a feasible project.

On July 6, 1979, appellees Dale Fraser, et al., filed a notice of appeal on the above decision in the Hughes County Circuit Court. On July 17, 1979, Estabrook requested leave to intervene in the proceeding, which request was allowed. Appellees moved the circuit court for a preliminary injunction, and this request was granted.

Estabrook filed a motion to dismiss and motion to lift injunction on August 31, 1979. These motions were denied by the court on September 10, 1979. Following the submission of briefs, and oral argument heard on September 9, 1979, the court issued an "order Reversing and Remanding a Decision of The Water Rights Commission." This order made a final disposition of the entire case before the circuit court. This appeal was taken by the Commission. Estabrook did not join in the appeal.

■ The scope of review in an administrative agency case is that we must uphold the agency's decision unless its decision is clearly erroneous in light of the entire record. SDCL 1–26–36(5). We discussed the "clearly erroneous" standard in *In Re Es-*

*tate of Hobelsberger*, 85 S.D. 282, 289, 181 N.W.2d 455, 459 (1970), where we stated that the agency decision would be upheld unless we are "left with a definite and firm conviction that a mistake has been committed." We are definitely and firmly convinced that a mistake has been committed in this case.

The first issue is whether the application submitted by Estabrook on May 24, 1979, was a "new" or an "amended old" application. The record is clear that the Commission instructed Estabrook, at the March 1979 meeting, to combine two applications into one "new application." The Commission thereafter consistently made reference to it as a "new application." This new application was a combination of lands described under experimental permit No. 3435–3 of December 1976 and those described in the application of February 8, 1978. Neither of the earlier applications individually contained the entire legal description of the land appearing on the application approved in May, 1979. Estabrook had never before "noticed" this particular application for hearing, and neither had it been previously advertised. Those lands described in the application of February 8, 1978, had not been considered by the Commission until May 1979 due to the Commission's temporary removal of the Niobrara formation from any appropriation.

■ Quite simply, it is impossible to refer to an application that concerns lands that have never been formally considered by the Commission as being anything other than a "new application." Hence, SDCL 46–5–6.5 requires that there be a new soil-water compatibility approval prior to issuance of the permit. If approval was not required, an applicant could receive soil-water compatibility approval for a small amount of land, and then attempt to amend his application by adding land that was not compatible.

■ In addition to the Commission's mistake of not requiring a new compatibility sample, we find that the Commission abused its discretion by approving the permit. It is clear that all people in this state

have a property interest in the use of water. SDCL 46–1–1 and 46–1–3. SDCL 46–1–5(1) states that the use of water for domestic purposes is the highest use of water, and takes precedence if such use is consistent with public interest pursuant to SDCL 46–1–2. Although the Commission is no longer required to regulate irrigation to absolutely protect artesian pressure for domestic uses, reasonable domestic use must be assured before irrigation is allowed. SDCL 46–6–6.1. There is a "vested right" in the use of water for domestic purposes.

■ SDCL 46–6–6.1 does not, we are convinced, give the Commission unbridled power to approve irrigation projects without giving consideration to the maintenance of artesian head pressure as a method of delivery. This statute merely requires a balancing of interests between irrigation and delivery of water by artesian pressure for domestic use. The appellant relies heavily upon the first portion of SDCL 46–5–21, which states: "If the commission determines that there is unappropriated water . . . it shall endorse its approval upon the application . . . ." We agree that this section encourages full use of this state's waters, but it does not mandate a total disregard of the rights of other appropriators.

■ SDCL 46–5–18 gives the Commission discretion to "refuse to consider or approve an application . . . if in its opinion the approval thereof would be contrary to the public interests." We find no evidence in the record that the granting of the permit was in the public interest, and there is strong evidence showing that the public interest would not be served by approval of the permit. The initial water sample No. 76–073, submitted in December of 1976, was clearly marked "unsuitable," and thus we question whether this sample was properly approved. Water sample No. 78–065, which was submitted with the application in February of 1978, was approved by the Conservation Commission "with conditions" because of the high salinity content. However, the samples submitted by the surrounding landowners, which were taken from the same Niobrara Formation, were each found to be "unsuitable" or "absolutely unsuitable." In addition, a U.S. Geological Survey sample from Estabrook's well showed that the water was clearly unsuitable for irrigation. Yet, the Conservation Commission apparently refused to consider any sample other than the sample originally submitted with the application in February of 1978, because it felt that it could not revoke its prior approval of water sample No. 78–065 without proceeding into a contested case.

It is clear from the record that the Conservation Commission was unaware that this was a new application. If it had been aware of this fact, it would have required a new water sample. It is our impression from the record that the Commission knew of the Conservation Commission's misconception. The Commission was also clearly aware that Estabrook's land was not compatible with the water sample, just as it was unsuitable when the experimental permit was granted in 1977.

The evidence is overwhelming to the effect that the granting of this permit would be detrimental, not beneficial, to the public interest.

The decision of the circuit court is affirmed.

WOLLMAN, C. J., MORGAN and HENDERSON, JJ., and GROSSHANS, Circuit Judge, concur.

GROSSHANS, Circuit Judge, sitting for FOSHEIM, J., disqualified.