MEADE EDUCATION
ASSOCIATION, Appellee,

v.

MEADE SCHOOL DISTRICT
46–1, Appellant.

No. 15364.

Supreme Court of South Dakota.

Argued Oct. 23, 1986.

Decided Jan. 21, 1987.

Rehearing Denied Feb. 11, 1987.

Linda Lea M. Viken of Finch and Viken, Rapid City, for appellee.

Bruce A. Hubbard of Morrill, Hansen, Hubbard & Brown, Sturgis, for appellant.

WUEST, Chief Justice.

Appellant, Meade School District 46–1 (District) appeals from a circuit court deci-

sion reversing a Department of Labor (Deputy Secretary) decision and holding the District had committed an unfair labor practice against Meade Education Association (MEA), appellee. We reverse.

In the Fall of 1983, the District's administrators learned that the South Dakota Board of Regents was considering new requirements for admission to South Dakota's colleges and universities and the State Board of Education was therefore considering a proposal to amend graduation requirements at South Dakota's high schools. The District administrators concluded that an extra classroom period should be created for the fall of 1984 to accommodate a new curriculum at the Sturgis high school. The additional class period would increase the number of available teaching periods from six periods to seven. With six periods the teachers were reporting at 8:30 a.m. and beginning classes at 9:00 a.m. There were six class periods of 55 minutes and a 30 minute lunch break. Classes ended at 3:10 p.m. and teachers could leave at 3:30 p.m. Seven periods could be created for the 1984–85 school year by beginning classes at 8:50 a.m., reducing class periods to 50 minutes, reducing the lunch period to 25 minutes, and dismissing classes at 3:30 p.m.

For twenty years a "full load" for teachers at the high school had consisted of five periods of instruction in a six-period day. Alternatively, the new system would change the "full load" to six periods of class time in a seven period day. While a teacher's day would still begin at 8:30 a.m. and end at 3:30 p.m., the number of minutes spent in a class would increase from 275 minutes to 300 minutes.

The teachers were concerned about this possible change and expressed their concerns at the first 1984–85 teacher contract negotiations on April 13, 1984. The teachers, through their official bargaining unit, the MEA, explained that they should receive additional compensation for the increased time teachers would be required to devote beyond the existing "full load."

The MEA proposed that the 1983–84 contract be amended to limit instructional time and require the district to pay teachers for minutes taught in excess of the 275 minute limit. The Board took the position that the proposal was not negotiable and adopted the seven period day at its April 17, 1984 meeting.

At a special Board meeting on May 8, the Board asked its negotiators what input had been made by the teachers concerning the change and if the teachers had proposed any alternative schedules or salary changes. The Board was told that the MEA had concerns and various alternatives but there was no action taken at that meeting. Several more negotiation sessions occurred thereafter at which the MEA continued to press for a pro rata increase in pay. The MEA insisted that it would be an unfair labor practice if the Board should implement the seven period day without reaching some sort of agreement with the teachers.

By May 25, with no agreement in sight, the Board's negotiators and the MEA proposed to form a composite committee that would form mutually acceptable guidelines for implementation of a seven period day. At a May 29 meeting, the negotiators met to prepare the 1984–85 contract covering all areas agreed upon. It was agreed that the committee which was to solve the conflict should report back on January 15, 1985. The MEA was at first reluctant to agree on that date unless the seven period day would not begin in the fall. The MEA claims the Board's negotiators told them that it would not be implemented in the fall. The Board denies this. In any case, a negotiated agreement was written which included in Section 3.4 the creation of the composite committee as follows:

> Teaching Loads—A nine member committee will be formed of three Board members, three administrators, and three teachers (selected by the Association). At the conclusion of their deliberations they will make a recommendation

to the School Board regarding guidelines dealing with staffing and teacher loads at seven-twelve grade levels. The Committee should make its recommendations by January 15, 1985.

Also included was Section 3.2 which was identical to the provision in the 1983–84 contract stating:

Work Day—The work day shall not exceed seven (7) hours. Principals have the right to assign a work schedule with a total of not less than one (1) hour preparation time not including recess.

Communication between the parties deteriorated during the summer. The MEA wanted some wording changes to Section 3.4 to more accurately reflect their understanding of the purpose of that section. Obviously, Section 3.4 did not delay implementation of the seven period day or make implementation dependent upon the recommendations of the committee. Eventually, the MEA determined that the Board intended to implement the seven period day and at that point filed its unfair labor practice with the South Dakota Department of Labor.

The MEA complaint charged the District with a violation of SDCL 3–18–3.1(1), (5) and (6), and prior to the September 26, 1984 hearing the MEA sought to amend their petition to include violations of SDCL 3–18–7 and SDCL 3–18–8. The Department denied the motion to amend and concluded that the District had not committed an unfair labor practice. The Department's decision focused on Section 3.2 of the negotiated agreement, when it stated:

It should be noted that this provision provides for a seven (7) hour workday. Further, the provision indicates that the school principals have historically had the authority to assign work schedules within the confines of the seven hour workday. The only restriction attached to the right of assignment is that a teacher must be allowed one hour preparation time, which would not include a recess. The MEA, having previously negotiated the workday and the right of the principal to make work schedule assignments, cannot now claim that negotiation rights to a 'normal teaching load' have been somehow reserved.

The MEA proferred that assignment load affects "rates of pay, wages, hours or other conditions of employment" under SDCL 3–18–3 and was therefore a mandatory subject of bargaining. The Department's conclusion was that teacher assignment load was a management prerogative and was therefore non-negotiable. As authority for its decision the Department cited *Aberdeen Ed. Ass'n v. Aberdeen Bd. of Ed., Ind. Sch. D.*, 215 N.W.2d 837 (S.D.1974). Upon appeal to the circuit court, the Department's decision was affirmed. The court held the Department had the discretion to deny the motion to amend and based on *Aberdeen* the Department was not clearly erroneous [1] in its decision.

Shortly after the trial court's decision our opinion in *Rapid City Educ. v. Rapid City Area School*, 376 N.W.2d 562 (S.D. 1985) was handed down. Our decision in *Rapid City* overruled our decision in *Aberdeen*. Consequently, the MEA requested the trial court to reconsider its decision, which request was granted. Upon reconsideration, the trial court overruled its decision and entered a judgment reversing the department and holding the District guilty of an unfair labor practice in unilaterally implementing the seven period day after reaching an agreement with MEA that it would not implement the seven period day until after the committee report. The court held that the Board committed an unfair labor practice by issuing contracts which were not on the same terms and conditions as the previous year, and that employees who were assigned a teaching load in excess of their prior normal working load were entitled to compensation for their additional work.

---

**1.** This may have been the wrong scope of review, since the issue was a question of law. *See* Scope of Review in *Johnson v. Skelly Oil Co.*, 359 N.W.2d 130 (S.D.1984).

■ The District's first claim of error is the trial court erred in ruling that the Deputy Director of the Department of Labor should have granted MEA's motion to amend. In his pre-Rapid decision the trial court ruled the Deputy Director did not abuse his discretion in refusing the amendment urged by MEA. However, on reconsideration he specifically held it was an abuse of discretion by the Deputy Director to deny the amendment. Although it may not have been an abuse of discretion at the time the Deputy Director made his decision since he was relying on *Aberdeen* we believe that upon remand the Deputy Director should permit the amendment.

■ The District further claims the Court erred in holding the District committed unfair labor practices. We believe the Court did go too far in that respect. The issue decided by the Deputy Director was whether the refusal of the Board to negotiate on the change from a six to a seven period day was an unfair labor practice. Relying upon our decision in *Aberdeen,* the Director concluded it was not. It would appear this was the only issue on appeal to the circuit court, although we cannot readily ascertain this from the record since no statement of issues on appeal was filed with the clerks of courts as required by SDCL 1–26–31.4. In order to frame the issues on appeal to the circuit court, this statement should have been filed.[2] In many respects this case was tried de novo, as the trial court made findings of fact and conclusions of law on issues which were not decided by the Director. What the trial court should have done was decide only the issues presented by the statement of issues on file. By proceeding without a statement of issues, the trial court decided issues of fact and conclusions of law which were never considered by the agency. The trial court should not pass upon issues of fact and conclusions of law which have not been decided by the agency, unless there is a

special statute to the contrary similar to SDCL 3–18–17 or 1–26–30.1.

■ The trial court should have remanded this case back to the Department for further proceedings consistent with our decision in *Rapid City.* We have held "the court cannot affirm, modify or reverse the findings and conclusions entered by the agency when there are none. The circuit courts only option was to remand the cause to the Department for further proceedings, i.e., the making of findings of fact and conclusions of law." *State Dept. of Public Safety v. Eastman,* 273 N.W.2d 159 (S.D. 1978), *see also Johnson v. Skelly Oil Co.,* 359 N.W.2d 130 (S.D.1984). Although the Deputy Director did enter findings of fact and conclusions of law, he did not reach the issues raised by the proposed amendments, nor did he determine the teachers were entitled to extra compensation for additional work. We have not overlooked the 1983 amendments to SDCL 1–26–37 and 1–26–36. *See State, Division of Human Rights v. Miller,* 349 N.W.2d 42 (S.D.1984). Nevertheless, we believe the agency should first decide the issues in controversy before the Court decides them unless the agency fails to make and file a decision pursuant to SDCL 1–26–30.1.

We reverse the judgment of the circuit court and remand the cause to that court with instructions for remand to the Deputy Director to allow the amendment of MEA's petition and to determine as a result of our decision in *Rapid City* whether the district was guilty of unfair labor practices, and if so, whether the teachers are entitled to extra compensation for additional work, and if so, how much.

MORGAN, HENDERSON and SABERS, JJ., and FOSHEIM, Retired Justice, concur.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

2. This may be jurisdictional, but in the absence of the issue being briefed, we are reluctant to

decide sua sponte.