Leonard OBERLE, on behalf of himself and all firefighters of the City of Aberdeen Fire Department excluding the Chief, Deputy Chief and Chief of the Fire Prevention Bureau, and Local 446 International Association of Firefighters, their duly certified representative, Plaintiffs and Appellants,

v.

CITY OF ABERDEEN, a Municipal Corporation and Thomas L. Hopper, Safety Commissioner, Defendants and Appellees.

Nos. 17078, 17098.

Supreme Court of South Dakota.

Argued Oct. 24, 1990.

Decided May 8, 1991.

Dennis W. Finch of Finch, Viken, Viken & Pechota, Rapid City, for plaintiffs and appellants.

Tom Tobin of Tonner & Tobin, Aberdeen, for defendants and appellees.

MORGAN, Retired Justice.

This appeal, initiated by the Aberdeen Firefighters Union (Union), by its president Leonard Oberle, and the notice of review filed by the City of Aberdeen (City), lie from a decision of the trial court affirming in part and reversing in part the decision of the Department of Labor, Division of La-bor and Management (Department), which resulted from an unfair labor practice complaint filed by Union. Department's decision held that City had committed an unfair labor practice by eliminating the captain positions and by unilaterally banning the practice of "time trading" which was a mandatory subject of bargaining. We affirm in part and reverse in part.

The union in this case was organized after the decision of this court in *Appeal of City of Aberdeen,* 270 N.W.2d 139 (S.D. 1978), wherein this court reversed a circuit court decision, thus affirming Department's decision to allow the firemen to organize a union, separate and independent from the bargaining unit representing other city employees. In that decision, we also affirmed the Department and circuit court decisions that the position of captain is not a supervisory position, and thus captains were not barred from participation in the bargaining unit. *Id.*

Since that time, Union and City have met annually and negotiated a collective bargaining agreement for the subsequent year. In the 1988 negotiations for the 1989 agreement, City raised the subject of eliminating the three captain positions. No agreement was reached on this issue. The subject of modification or elimination of the "time trading" practice was not broached during the negotiations. The parties were unable to reach a new contract and on January 4, 1989, City and Union agreed that "[a]ll the provisions of the 1988 agreement except for [salary adjustments] shall become effective on January 1, 1989."

On January 5, 1989, City posted two notices which are the subject of this dispute. The first notice stated that all captain positions would be laid off and the three existing positions would be terminated effective March 1, 1989. The second notice stated that the trading of time between firefighters would no longer be allowed as of January 15, 1989.

On January 8, 1989, despite their knowledge of the two unilateral changes announced in the notices, the union membership met, considered, and ratified the January 4 agreement as their 1989 contract.

On January 16, 1989, less than two weeks after the notice of the elimination of the three captain positions, City issued a position announcement, creating three deputy chief positions. The deputy chiefs are not part of the Union's bargaining unit. *See Appeal of City of Aberdeen,* 270 N.W.2d 139.

On January 18, 1989, Union filed an unfair labor practice complaint with Department. Union alleged that the unilateral elimination of the captain position violates SDCL 3–18–3.1, –3.2, –3.3, and –3.5, and that unilateral elimination of the time trading policy violates SDCL 3–18–3.1, –3.3, and –3.5. City countered that the question of whether to have captains is not negotiable, that time trading was never part of a negotiated contract between City and Union, and that Union accepted these changes by ratification of the 1989 contract because Union had notice of the changes prior to ratification by the membership.

After a formal hearing, Department determined that City's conduct in eliminating the captain positions constituted an unfair labor practice in violation of SDCL 3–18–3.-1(1), (5), and (6). Department also held that City's refusal to negotiate regarding the time trading policy was an unfair labor practice in violation of SDCL 3–18–3.1(5). In particular, Department found:

### XXIII.

That although the city contends that the job description for the Deputy Chiefs entails more than was done by the Captains, the record is clear that the duties of the Captains were merged into the new Deputy Chief positions.

### XXIV.

That the city, through the testimony of safety commissioner Thomas Hopper, admitted that the primary reason for the elimination of the captains' positions was that they did not feel these captains should be under the union.

### XXV.

That the City could not give any other reasons other than a general statement that the elimination of the positions was done to provide administrative assistance to the Chief, however, no examples were given for administrative assistance nor were there any other reasons advanced for said changes.

### XXVI.

That the time trade policy was one of long duration and custom and practice within the Aberdeen Fire Department. City filed its notice of appeal to the circuit court on August 3, 1989. City failed to file a statement of issues on appeal as required by SDCL 1–26–31.4, however, and as a result, on September 18, 1989, Union filed a motion to dismiss. At the hearing on the matter on November 7, 1989, City filed a motion for an extension of time in which to file its statement of issues. On November 16, 1989, the trial court granted City relief pursuant to SDCL 1–26–30.5, extending the time for City to file its statement of issues. City filed its statement of issues on November 21, 1989.

On administrative appeal, the circuit court reversed Department's decision regarding the elimination of the captain positions. The circuit court concluded:

### IV.

That the unilateral change in the definition of the bargaining unit here was not an unfair labor practice because the union was given an opportunity to bargain on the subject, that the union waived its right to bargain this issue and did ratify a contract which authorized the City to lay off the Captains.

However, the circuit court affirmed Department's decision that unilateral elimination of the time trading policy constituted an unfair labor practice. This appeal by both parties followed.

The Union raises two issues:

1. Did City's failure to timely file a statement of issues as required by SDCL 1–26–31.4 deprive the circuit

court of jurisdiction over the appeal from the Department of Labor?

2. Was City's removal of captains from the bargaining unit of the firefighters union an unfair labor practice?

By notice of review, City raises two additional issues:

3. Was time trading a mandatory subject of bargaining?

4. Does the 1990 contract between City and Union render this appeal moot?

This case is an administrative appeal and, as such, the scope of review is governed by SDCL 1–26–36. When reviewing questions of fact, it is the duty of both the circuit court and this court to determine whether the agency's findings of fact are clearly erroneous. *Sharp v. Sharp*, 422 N.W.2d 443, 447 (S.D.1988); *Permann v. Department of Labor, Unemployment Ins. Div.*, 411 N.W.2d 113, 116–17 (S.D.1987). Further, "the question is not whether there is substantial evidence contrary to the agency finding, but whether there is substantial evidence to support the agency finding.... [T]he court shall give great weight to the findings made and inferences drawn by an agency on questions of fact." *Schlenker v. Boyd's Drug Mart*, 458 N.W.2d 368, 371 (S.D.1990), *quoting Lawler v. Windmill Restaurant*, 435 N.W.2d 708, 711 (S.D. 1989) (Morgan, J., concurring specially). *See* SDCL 1–26–36. When reviewing questions of law, however, the conclusions of law drawn by the agency and by the circuit court are fully reviewable. *Sharp*, 422 N.W.2d at 447; *Permann*, 411 N.W.2d at 117.

■ We will deal with the two procedural issues first. Because City contends that the issues raised by Union's appeal have been rendered moot by virtue of the 1990 contract between the parties, we consider this issue first. In its brief, City states that it negotiated the issues regarding the captain positions and the time trading when bargaining over the 1990 contract. An impasse was declared and City subsequently implemented its last best offer, according to its brief. City also directs our attention to a decision by Department involving the 1990 contract, asserting that this adminis-

trative decision upheld the issues contested here.

We begin by noting that none of the matters involving the 1990 contract or its negotiation are part of the record before us in this appeal, and cannot be considered here. *See* SDCL 15–26A–47. Also, because the 1990 contract was admittedly implemented following an impasse, the parties clearly have not resolved the issues of captains and time trading. Finally, the decision of Department which counsel tells us *upheld* the 1990 contract, relates only to the interpretation of the emergency leave provision and the court appearances provision of the 1989 contract. Department's decision did not address the issues of the termination of captain positions and time trading, and, contrary to counsel's representation, did not purport to ratify the 1990 contract. For these reasons, we cannot conclude that Union's appeal is moot.

In the second procedural issue Union argues that City's failure to timely file a statement of issues, pursuant to SDCL 1–26–31.4, deprived the circuit court of jurisdiction to review Department's ruling and the trial court erred in extending the time for filing.

The statute at issue here is SDCL 1–26–31.4, and it states as follows:

Within ten days after the filing of the notice of appeal as required by § 1–26–31, the appellant, if there are multiple parties to the appeal, shall file with the clerk of the circuit court a statement of the issues he intends to present on the appeal and shall serve on the other parties a copy of such statement. If any other party wishes to raise additional issues on appeal, he shall file an additional statement of issues on appeal within ten days after service of the appellant's statement.

Appellant contends that the filing of the statement of issues is jurisdictional, and even if it is not, SDCL 1–26–30.5 does not authorize the circuit court to extend the time for filing the statement of issues.

■ First, we recognize that the decision in *Meade Education Association v.*

*Meade School District,* 399 N.W.2d 885, 889 n. 2 (S.D.1987), did suggest *without deciding* the possibility that failure to timely file a statement of issues as required by SDCL 1–26–31.4 "may be jurisdictional." We now address the issue. Failure to timely file a *notice of appeal* of an agency's decision deprives both the circuit court and this court of jurisdiction to review the agency's decision. *Claggett v. Department of Revenue,* 464 N.W.2d 212 (S.D. 1990); *Kulesa v. Department of Public Safety,* 278 N.W.2d 637 (S.D.1979). SDCL 1–26–31 provides the basis for the circuit court to exercise jurisdiction. Because jurisdiction is conferred by the filing of the notice of appeal, it would be inconsistent to require that, even if the notice of appeal is filed, the statement of the issues must also be filed to properly invoke jurisdiction.

Such a conclusion is supported by the fact that SDCL 1–26–31.4 on its face does not purport to apply to all appeals of agency decisions. If it were jurisdictional, all appeals would require that a statement of issues be filed. Also, in cases where the statute does apply, the statement of issues is to be filed "[w]ithin ten days *after* the filing of the notice of appeal...." (Emphasis added.) It is illogical to conclude that the act required to invoke jurisdiction would not be the first step taken in an appeal. For these reasons, it is clear that the filing of the statement of issues does not establish jurisdiction in an administrative appeal.

■ Here, City properly filed its notice of appeal and the circuit court had jurisdiction to review Department's decision. The court then invoked its discretionary power under SDCL 1–26–30.5 to expand the time to file the statement of issues. SDCL 1–26–30.5 provides:

> In the interest of expediting decisions in cases of pressing concern to the public or to litigants, or for good cause shown, the circuit court may suspend the requirement or provisions of these rules on application of a party or on its own motion and may order proceedings in accordance with its direction.

This statute grants the circuit court broad discretion in reviewing administrative appeals. The circuit court determined that the case was "one of pressing concern to the public and to the litigants." It was squarely within the court's power to extend the time in which to file a statement of issues and we affirm this action.

■ We then turn to the substantive issues regarding the elimination of the captain positions and time trading. Union argues that the circuit court erred in reversing Department's decision that the elimination of the captain positions was an unfair labor practice. In determining whether City's action was an unfair labor practice, the first question is whether elimination of the captain positions was a mandatory subject of bargaining. In *Rapid City Education Association v. Rapid City Area School District #51–4,* 376 N.W.2d 562 (S.D.1985), we established a three-part test to determine whether a particular issue must be negotiated in the context of public sector employment contracts. The test is as follows:

1. A subject is negotiable only if it intimately and directly affects the work and welfare of public employees.

2. An issue is not negotiable if it has been preempted by statute or regulation.

3. A subject that affects the work and welfare of public employees is negotiable only if it is a matter on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy.

*Id.* at 564. Unilateral changes cannot be made by a public employer regarding topics which are mandatory subjects of bargaining unless the employer and employees have reached a bona fide impasse and the employer has bargained in good faith. *Ottawa County v. Jaklinski,* 423 Mich. 1, 377 N.W.2d 668, 673 (1985); *Roberts v. Automobile Club of Michigan,* 138 Mich.App. 488, 360 N.W.2d 224 (1984); *cert. denied* 479 U.S. 889, 107 S.Ct. 289, 93 L.Ed.2d 263 (1986); *Foley Educ. Ass'n v. Independent*

*School Dist. No. 51*, 353 N.W.2d 917 (Minn. 1984); National Labor Relations Act, § 8(a)(5), (d) as amended, 29 U.S.C. § 158(a)(5), (d).

■ Both Department and the circuit court properly viewed *Rapid City, supra,* as controlling in their analysis. The two tribunals diverged, however, on whether eliminating the captain positions intimately and directly affects the welfare of the employees, or whether the removal of captains is a matter of inherent management prerogative regarding public policy. The resolution of this issue is a matter of law which is fully reviewable. *Sharp,* 422 N.W.2d at 447; *Permann,* 411 N.W.2d at 117.

Neither party asserts that either statute or regulation preempts the issue of the removal of captains; therefore, the analysis here must focus on the first and third elements of the *Rapid City* test. Finding that the termination of the captain positions removed these employees from the bargaining unit, effectively ending their ability to collectively bargain, Department determined that the primary reason for the change was to remove captains from the union. Upon review of the record, it is apparent that there is substantial evidence to support Department's finding that City's motivation was the desire to remove the captain duties from the bargaining unit. City admitted that this was the intent of the action. It cannot be seriously argued that the termination of this position does not intimately affect the welfare of the men who were employed as captains by the Aberdeen Fire Department. Thus, under the first element of the *Rapid City* test, the termination of captain positions would appear to be a mandatory subject of bargaining.

City argues, however, and the circuit court concluded, that Union waived its right to bargain regarding the termination of the captain positions by signing the 1989 contract three days after City posted the notice that the captain positions were being eliminated. Support for City's waiver argument comes from *Foley Education Association v. Independent School District No. 51*, 353 N.W.2d 917 (Minn.1984). In

that case, while the parties had reached substantial agreement on the terms of the new contract in October 1981, they did not formally execute the collective bargaining agreement until July 1982. *Id.* at 920. During the intervening time, the school district increased teaching assignments and placed eight teachers on unrequested leave of absence. *Id.* During bargaining, the parties had negotiated over increased teaching assignments but did not reach an agreement on the issue. *Id.* at 919–20. Just as in this case, the issue in *Foley* was whether the employer's unilateral action deprived the union of its right to negotiate. *Id.* at 921.

The Minnesota Supreme Court noted the general rule that "an employer may not be charged with an unfair labor practice in the absence of a demand for negotiation following the union's receipt of information of a planned change in a term or condition of employment." *Id.* (*citing Ogilvie v. Independent School Dist. No. 341,* 329 N.W.2d 555 (Minn.1983) and *NLRB v. Alva Allen Indus.,* 369 F.2d 310, 321 (8th Cir.1966)). The *Foley* court also noted, however, that the union's failure to demand bargaining does not constitute a waiver of the right to negotiate unless the employer has given adequate and timely notice of its intended action. 353 N.W.2d at 922. The court then went on to conclude that the union waived its right to bargain because it had knowledge of the proposed change at least three months prior to its implementation and failed to demand that the school district negotiate. *Id.* at 922.

In this case, while City had proposed the elimination of the captain positions during negotiations for the 1989 contract, the parties reached an agreement to simply continue the 1988 contract (with provision for change in salary only) on Wednesday, January 4, 1989. The next day, City posted its notice that it was unilaterally terminating the captain positions as of March 1, 1989. On Sunday, January 8, 1989, the Union membership met to consider the contract that had been agreed upon on January 4 and ratified that contract.

City does not contend that a bona fide impasse was reached giving it the right to implement a unilateral change. *See Ottawa County,* 423 Mich. 1, 377 N.W.2d 668. City argues that the four-day interval between the agreement by the negotiators and the ratification by the Union membership was a sufficient time in which Union could have demanded bargaining. We disagree. Union did not waive its right to bargain. The two-month interval between the posting of the notice and the effective date of the unilateral termination is not the issue. Rather, it is the three-day interval between the posting and Union's ratification meeting that is pertinent to this issue. *See NLRB v. Cone Mills Corp.,* 373 F.2d 595 (4th Cir.1967) (one month is a sufficient amount of time for union to request bargaining on a proposed unilateral change). To condone City's unilateral changes immediately after arriving at an agreement with Union would make a farce of collective bargaining.

Although the circuit court's findings of fact and conclusions of law do not speak directly to the third element in the *Rapid City* test, its memorandum opinion, incorporated therein, did enumerate Department's findings regarding that issue thusly:

1. The Department had determined that the City's main motivation for eliminating the captains and replacing them with deputy chiefs was to remove them from the bargaining unit.

2. That even if some of the deputy chief functions were not performed by the captains, all of the captains functions were merged into the deputy chief positions.

3. That the city made no showing that the issue of captains versus deputy chiefs significantly interferes with the exercise of inherent management pre-

rogatives pertaining to the determination of public policy.

The circuit court, in reversing Department's decision, determined that the elimination of the captains was a reorganization within the scope of management prerogative and not a mandatory subject of bargaining.

Union argues that is error, inasmuch as there is no evidence that bargaining on this issue would significantly interfere with City's inherent management prerogatives. City and the circuit court relied on *Ishpeming Supervisory Employees' Chapter of Local 128 v. City of Ishpeming,* 155 Mich. App. 501, 400 N.W.2d 661, 666 (1986), leave to appeal denied 428 Mich. 902, as support for their position. The *Ishpeming* court held that "a decision to transfer work in pursuit of a legitimate reorganization effort was not a mandatory subject of bargaining, but the impact of that decision was an issue for bargaining." *Id.* 400 N.W.2d at 665. If the transfer is not part of a legitimate reorganization effort, and done only to remove bargaining unit work from union workers, the transfer is a mandatory subject of bargaining. *Detroit Police Officers Ass'n v. City of Detroit,* 428 Mich. 79, 90–91, 404 N.W.2d 595, 601 (1987). *See Fibreboard Paper Prod. Corp. v. NLRB,* 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964).

■ Thus, the question is a factual one: Was the decision to terminate Union captain positions and transfer captain duties to non-union deputy chiefs done solely to remove bargaining unit work from Union workers? While Department relied on the testimony of City Commissioner Thomas Hopper * (who, as Safety Commissioner, was in charge of the fire and police departments and traffic safety) that the purpose of the reorganization was to remove the

---

* At the time of the decision in *Appeal of City of Aberdeen,* the fire department employed deputy chiefs. The position was phased out and City now contends that deputy chiefs are once again needed to provide administrative assistance to the chief of the fire department. Department considered and rejected City's contention that it legitimately needs deputy chiefs and that the deputies necessarily must perform the duties

that were previously assigned to captains. Department inquired about the actual duties that deputy chiefs were to perform. Department was not satisfied that those duties of the deputy chief that were in addition to the transferred duties of the captain were adequate to make the new positions supervisory, or that bargaining regarding the change would interfere with City's inherent management prerogative.

captains from the union in spite of this court's determination in *Appeal of City of Aberdeen,* the circuit court relied on the testimony of City's personnel director, Mr. Alan Ruhlman, that there were administrative reasons which City felt justified the reorganization. Thus, the circuit court committed the error of weighing the evidence before it in the cold record, without the opportunity to observe the witnesses as the hearing officer, the Department Director, had. In administrative appeals, with regard to factual determinations, the courts are bound to give great deference to the agency's findings and may only set them aside if clearly erroneous. SDCL 1–26–36. If there is evidence to support the finding, we will affirm it. *Schlenker,* 458 N.W.2d at 371; *Lawler,* 435 N.W.2d at 711.

The circuit court's memorandum conceded that there is good authority that, notwithstanding the *Ishpeming* holding, the specifics of the lay-offs such as timing, number of persons laid off and the identity of the employees affected, are negotiable. *NLRB v. United Nuclear Corp.,* 381 F.2d 972 (10th Cir.1967); *FireFighters Union v. City of Vallegjo,* 12 Cal.3d 608, 116 Cal. Rptr. 507, 526 P.2d 971 (1974); *Police Officers Ass'n v. Southfield,* 433 Mich. 168, 445 N.W.2d 98 (1989). Perhaps that is why the circuit court opted to decide the case on the waiver rationale. Regardless, Department specifically found that the termination of the captain positions was prompted by City's desire to remove captain duties from the bargaining unit. There is substantial evidence to support this conclusion, and we will not set it aside.

The three-part test of *Rapid City* has been met in regard to the elimination of the captain positions: (1) the termination intimately and directly affects the work and welfare of the captains; (2) the elimination of the captain positions is not preempted by statute or regulation; and (3) the subject would not significantly interfere with City's exercise of its inherent management prerogatives. *See Rapid City,* 376 N.W.2d at 564–65.

Lastly, we examine the issue on "time trading," raised by City by notice of re-view. City argues that termination of the time trading policy was not a mandatory subject of negotiation because time trading does not satisfy elements one and three of the *Rapid City* test. Department held that although the time trading policy was never expressly incorporated into any written union contract, the past course of conduct between the parties established that the policy was part of the contract between the parties. Department went on to hold that "where there has been a course of conduct that has become the custom for a significant period of time, it cannot be unilaterally changed by one party without the benefit of collective bargaining." The circuit court affirmed the decision of Department.

Some background is necessary to an intelligent discussion of this issue. "Time trading" is an informal policy which has gone on for years prior to unionization of the firemen and continued up to January 15, 1989. It allowed firemen to trade work time with the approval of the officer in charge of their shift, and then pay off this obligation either by working back the time for the second fireman, or by direct cash payment to the second fireman. The trading of time was never specifically addressed in any previous collective bargaining agreement but is referred to in a document entitled "Appendix B, General Rules and Regulations," wherein it is said: "Members shall not trade 'time' nor trade days off except with permission of the Officers-in-charge of their shifts." It is noteworthy that firefighters are required to work 24–hour shifts and would otherwise be required to miss an entire 24–hour shift to take off one or two hours during the day. The record indicates that the time trading was used by firefighters to attend their children's school activities, attend county commission meetings (one firefighter was also a county commissioner), and participate in recreational activities.

We examine City's arguments regarding the *Rapid City* test. The first element is whether the subject intimately and directly affects the work and welfare of the firefighters. This part of the *Rapid City* test expanded the definition of "other conditions of employment" used in SDCL 3–18–

3, as set out in *Aberdeen Education Association v. Aberdeen Board of Education*, 88 S.D. 127, 215 N.W.2d 837 (1974). Our holding in *Rapid City* expressly found *Aberdeen Education Association* too restrictive in limiting "other conditions of employment" to "conditions of employment which materially affect rates of pay, wages, hours of employment and working conditions." 376 N.W.2d at 564. Given our expanded definition of "other conditions of employment," the ability of employees to trade the hours that they are scheduled to work clearly affects their hours of employment and their welfare, and thus satisfies the first element of the *Rapid City* test. In addition, the unique nature of the firefighters' hours, previously referred to, makes it even more apparent that the time trading policy is an issue which intimately affects the work and welfare of the firefighters.

We next consider the third element to determine whether time trading is a mandatory subject of negotiation. City argues that scheduling individuals to work is an inherent management prerogative, that time trading usurps managerial prerogatives, and that time trading has resulted in chaos. We begin by noting that both Department and the circuit court rejected this claim. In the proceedings below, City presented a long list of ways in which it believes that trading time interferes with its inherent management prerogatives. Substantial evidence supports the findings that time trading was done in a responsible manner by the firefighters, did not create chaos for management, and did not significantly interfere with management.

■ The issue here is whether the time trading policy significantly interferes with inherent management prerogatives pertaining to the determination of fire department policies. In the context of public sector labor disputes, to take an otherwise mandatory subject of negotiation out of the scope of required bargaining, there must be a significant impairment of the ability of the employer to determine public policy. *Rapid City*, 376 N.W.2d at 564 (*quoting In re Local 195, IFPTE v. State*, 88 N.J. 393, 402, 443 A.2d 187, 191 (1982)). We are required to "balance the competing interests by considering the extent to which collective negotiations will impair the determination of governmental policy." *Id.*

■ Here, City has not argued that negotiations over time trading would interfere with its policymaking. City's challenge focuses on the discretionary nature of scheduling and management of fire departments, and balancing out the personnel present on any given work shift. While the scheduling of work hours may be managerial, City has wholly failed to demonstrate how its determination of policies will be significantly impaired by negotiating on this subject. Indeed, through negotiation, City and Union may be able to structure the time trading procedures in a manner which will benefit all parties involved and which will alleviate any perceived problems with the policy. Because negotiation over the time trading policy would not significantly interfere with City's management prerogative, it is a mandatory subject of negotiation under the *Rapid City* test.

Both Department and the circuit court employed an alternative analysis, holding that the time trading policy is a mandatory item of negotiation because the policy had become part of the collective bargaining agreement. The parties dispute whether the attachment to the contract of Appendix B (which contains the only written reference to time trading) makes the time trading policy part of the collective bargaining agreement. However, it is undisputed that the practice of trading time is a custom that has been part of the standard work procedures of the Aberdeen Fire Department for a significant period of time.

■ If a past practice which does not derive from the express terms of a bargaining agreement becomes a part of the employer's structure and conditions of employment, it takes on the same significance as the other terms of employment and is protected from unilateral change. *Mid–Michigan Educ. Ass'n v. St. Charles Community Schools*, 150 Mich.App. 763, 389 N.W.2d 482 (1986); *Board of County Comm'rs of Orange County v. Central*

*Fla. Professional Fire Fighters Ass'n*, 467 So.2d 1023 (Fla.Dist.Ct.App.1985). The key to determining whether time trading is part of the collective bargaining agreement is the intention of the parties to be bound by their agreement. *Daniel Const. Co. v. International Brotherhood of Teamsters, Local Union No. 991*, 364 F.Supp. 731, 737 (S.D.Ala.1973). Here, the time trading policy is not only well established, but it has also enjoyed recognition by City over the years. By their conduct, both City and Union have manifested their intention to be bound by a policy which permits firemen to trade their work hours with permission. We agree that the time trading policy has become a condition of employment and is a part of the collective bargaining agreement. As such, the policy is a mandatory subject of negotiation and cannot be unilaterally changed. *See Daniel Constr. Co.*, 364 F.Supp. 731; *Mid–Michigan Educ. Ass'n, supra; Board of County Comm'rs of Orange County, supra.*

 Because time trading is a mandatory subject of bargaining, under either analysis, City committed an unfair labor practice by unilaterally terminating the policy in the absence of a bona fide impasse. *Ottawa County*, 423 Mich. at 13, 377 N.W.2d at 673.

We affirm the trial court on the issues of jurisdiction and time trading (mootness was not an issue before the circuit court) and reverse the circuit court on the issue of elimination of captain positions, thereby affirming Department's decision.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., concurs in result in part and concurs specially in part.

AMUNDSON, J., not having been a member of the Court at the time this case was considered, did not participate.

---

HENDERSON, Justice (concurring in result in part; specially concurring in part).

## TERMINATION OF CAPTAINS

Substantively, I agree with the substantive holding because of the reasoning of the majority opinion; however, using the *Sharp* case as authority for its position on the clearly erroneous rule, is ill-begotten. *See*, Henderson, J., dissenting opinion in *Sharp*, not noted in the majority opinion. There are dozens upon dozens of cases, in this Court, citing the scope of review on factual questions before an agency. Examples: *Fraser v. Water Rights Comm. of Dept. of Natural Resource Development*, 294 N.W.2d 784 (1980); *Dakota Harvestore Systems, Inc. v. South Dakota Dept. of Revenue*, 331 N.W.2d 828 (1983). We also have an explicit statute on the subject. SDCL 1–26–36 states in pertinent part: "The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact." The Department of Social Services is no longer involved in establishing child support. On this subject of child support, the Department of Social Services cannot be "clearly erroneous" on child support because they cannot set child support. Our State Legislature changed this law. The *Sharp* case is currently inapposite authority for the clearly erroneous rule. Further, I note that the majority opinion cites *Lawler*, citing Morgan, J.'s special concurrence, but neglects to mention that this special writer dissented therein. *See, Lawler.*

I further wish to point out that the City of Aberdeen seems to pay little attention to the past decision of this Court in *Appeal of City of Aberdeen*, 270 N.W.2d 139 (S.D. 1978). In *Aberdeen*, this Court held that the captains were not barred from participation as a part of the bargaining unit.** We also held that the firemen of Aberdeen

---

** Since 1978, the captains have been a part of a collective bargaining agreement. In late 1988, the City expressed to the union that it wanted to exclude the captains from the bargaining union. Instead of negotiating the issue with the union, as required by SDCL 3–18–3, the City met with the captains *individually*, without the presence of the union, and discussed how to eliminate them. On January 4, 1989 negotiating teams met. It appeared that the teams could not agree, essentially, on anything. City, on the next day, unilaterally announced that it was eliminating the captains.

had a right to organize a union separate and apart from any other union representing city employees in Aberdeen. It appears to me that the City of Aberdeen is still attempting to get rid of these captains; this, the City of Aberdeen tries to accomplish by, unilaterally, eliminating three positions of captain. Collective bargaining did not, and should have, taken place. An elimination of these captain positions is a mandatory subject of bargaining for the reason that the elements of the *Rapid City* test were present.

I further note that the majority opinion cites to the 1985 decision of this Court in *Rapid City Education Association.* In said case, I specially concurred, which is not the law of the case, because the majority is the law of the case, but said opinion tends to express a historic fact, namely, that I did specially concur.

### TIME TRADING

Aberdeen firemen, according to the facts below, have acted responsibly for forty years concerning the "trading time" practice. It appears there was only one occasion, during that entire period of time, when a substitute was not present and this existed for just a few minutes. Obviously, this policy has not been detrimental to the citizens of the City of Aberdeen nor its general fire protection—protection which is needed and the citizens are paying for to protect their property. It is difficult for me to understand why the City of Aberdeen, with such performance before it, sees fit to take this issue to the highest court of this state. In different jargon, it does not make common sense.

Moreover, this long-standing practice in the Aberdeen Fire Department should be protected from a sudden and unilateral change. A practice, such as this, established for forty years should be treated as an integral part of the collective bargaining agreement itself. *Brotherhood of Maintenance v. Burlington Northern,* 802 F.2d 1016 (8th Cir.1986).